RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SCOTTSDALE INSURANCE COMPANY,
           *Plaintiff-Appellee/Cross-Appellant*,


           *v.*                                              Nos. 06-6385/6412


NORMAN FLOWERS,
                                      *Defendant*,


KATHLEEN BURKE,
           *Defendant-Appellant/Cross-Appellee*.

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 06-00019—Jennifer B. Coffman, Chief District Judge.

Argued: October 26, 2007

Decided and Filed: January 16, 2008

Before: KEITH and CLAY, Circuit Judges; STEEH, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Martha M. Eastman, EASTMAN LAW OFFICE, Louisville, Kentucky, for Appellant. John W. Walters, GOLDEN & WALTERS, Lexington, Kentucky, for Appellee. **ON BRIEF:** Michael R. Hance, FRANKLIN & HANCE, Louisville, Kentucky, for Appellant. John W. Walters, Drew Byron Meadows, GOLDEN & WALTERS, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant Kathleen Burke ("Burke") appeals the district court's amended order granting Plaintiff Scottsdale Insurance Company's ("Scottsdale") motion for declaratory judgment. Burke argues that the district court abused its discretion in exercising jurisdiction over the case pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (2000), and erred in its determination that Norman Flowers ("Flowers"), a therapist at the Morton Center, was not covered by the Morton Center's liability insurance policy with Scottsdale for tort damages

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

arising from Flowers' sexual affair with Burke.  Scottsdale cross appeals the district court's decision to amend the language of its original order and requests that this Court reinstate the original order. For the reasons that follow, we **AFFIRM** the district court's amended order.

## I.  BACKGROUND

In October 2001, Burke sought treatment for mental health issues at the Morton Center which referred her to Flowers, one of the Morton Center's therapists.  Burke had two sessions with Flowers in October; two additional sessions in March 2002; and a session in July 2002.  Several days after this last session, Burke and Flowers began a sexual relationship which lasted from July through August of 2002.

Scottsdale is the liability insurer of the Morton Center.  Its contract with the Morton Center provides that Scottsdale "will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**."  J.A. at 51.  Wrongful act is defined as "an act, error, or omission in the furnishing of professional health care services."  J.A. at 56.  The insurance contract defines an "insured" for the Morton Center to include "[y]our employees and volunteers, but only for acts within the scope of their employment by you."  J.A. at 53.

On March 17, 2003, Burke filed a civil tort action against Flowers and the Morton Center in Jefferson Circuit Court in Kentucky.  Burke alleged that Flowers negligently breached his professional standards for treatment by engaging in sexual relations with Burke and that this conduct had caused Burke severe emotional distress.  Burke further claimed that the Morton Center was negligent in hiring and supervising Flowers. Scottsdale was not joined as a defendant in this state court action.  Scottsdale claims in its brief that it attempted to intervene in this state court action (but there is no evidence of such facts in the record) and its motion was denied.  *See* Pl. Br. at 38 n.4.

On January 13, 2006, Scottsdale filed a Complaint for Declaratory Judgment against Burke and Flowers in the United States District Court for the Western District of Kentucky.  The Morton Center was never joined as a party to the dispute.  Scottsdale sought a declaration that it had no duty to extend liability coverage to Flowers for the claims brought against him by Burke in state court.

On June 5, 2006, Scottsdale filed a motion for declaratory judgment against Burke.  Burke's response to this motion disputed Scottsdale's characterization of the issue presented but did not request that the district court decline to exercise jurisdiction pursuant to the discretion afforded it under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Flowers did not file a response to the motion.

On July 25, 2006, the district court granted Scottsdale's motion and issued an opinion and order finding that Flowers' sexual affair with Burke was outside the scope of his employment as a matter of Kentucky law and concluding that Scottsdale "has no duty to extend coverage to Norman Flowers for any of the torts alleged in [the state tort action]."  J.A. at 709.

On August 2, 2006, pursuant to Federal Rules of Civil Procedure 59 and 60, Burke filed a Motion to Alter, Amend or Reconsider Declaratory Judgment in which she did not directly challenge the district court's legal findings or its exercise of jurisdiction but asked the district court to amend the language of its order.  Scottsdale filed a response to this motion on August 17, 2006.  On August 29, 2006, in her reply to Scottsdale's response, Burke challenged the district court's decision to exercise jurisdiction over Scottsdale's declaratory judgment action and requested that the district court vacate its previous order.

On September 27, 2006, Burke filed an additional Motion to Vacate Prior Declaratory Judgment and Stay Proceedings.  In this motion, Burke further elaborated her arguments against the

district court's decision to exercise jurisdiction. In particular, Burke informed the district court that the Morton Center had attempted to use the district court's July 25, 2006 order to preclude litigation on the issue of the Morton Center's liability in state court. Scottsdale did not file a response to this motion.

On October 3, 2006, the district court vacated its previous opinion and order and entered an amended opinion and order. After considering the factors regarding the exercise of jurisdiction over declaratory judgments which this Court outlined in *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir. 2004), the district court found that its exercise of jurisdiction over Scottsdale's claim was appropriate. The district court then restated its analysis from the previous order and confirmed its holding that Flowers' sexual affair with Burke was outside the scope of his employment as a matter of Kentucky law. However, based upon Burke's arguments, the district court chose to modify the language of its order concluding that Scottsdale "has no duty to extend coverage to Norman Flowers for his sexual affair with Kathleen Burke." J.A. at 25. Finally, without discussion, the district judge denied Burke's motion to stay the proceedings as moot.

On October 25, 2006, Burke timely filed her Notice of Appeal which was followed shortly by Scottsdale's timely Notice of Cross-Appeal.

## II. DISCUSSION

On appeal, Burke challenges, as an abuse of discretion, the district court's decision to exercise the jurisdiction over this appeal granted it under the Declaratory Judgment Act. She further contends that the district court erred in concluding that a therapist's sexual affair with a patient is outside the therapist's scope of employment as a matter of Kentucky law, and thereby finding that Scottsdale does not have a contractual obligation to extend tort liability insurance coverage to Flowers for his sexual affair with Burke. In its cross-appeal, Scottsdale argues that the district court abused its discretion in modifying the language of its original order when issuing its amended opinion and order. We consider each of these issues in turn.

## A.   JURISDICTION WITH RESPECT TO PLAINTIFF'S DECLARATORY JUDGMENT ACTION

### 1.   Preservation of the Issue for Appeal

Scottsdale argues that Burke did not preserve this issue for appeal because she failed to raise it with the district court until her reply to Scottsdale's response to Burke's motion to amend the original declaratory judgment order. *See* Pl. Br. at 30-32. Burke contends that the issue was not waived because it was eventually brought to the district court's attention and because the district court discussed the issue in its final amended order. *See* Def. Third Br. at 5-8. We agree with Scottsdale that this issue has not been properly preserved for appeal.

In general, challenges to the district court's subject matter jurisdiction are not waived by failure to raise them below and can be raised "at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). *See also* Fed. R. Civ. Proc. 12(h)(3). However, on this appeal, Burke does not challenge the district court's subject matter jurisdiction, but rather its discretionary decision to entertain an action over which it has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Supreme Court has explained that while the Declaratory Judgment Act provides the district court with jurisdiction over such actions, the court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Thus, the issue presented is not actually a jurisdictional challenge but a question of the propriety of the district court's decision to exercise its discretion with respect to the

subject matter jurisdiction granted it by Congress in the Declaratory Judgment Act.  *See id.*  Accordingly, traditional rules regarding the waiver of issues apply.

These rules generally provide that an argument not raised before the district court is waived on appeal to this Court.  *See United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 759 (6th Cir. 1999); *Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990).  Two main policies justify this general rule.  First, the rule eases appellate review "by having the district court first consider the issue." *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993).  Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal.  *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).

Despite the rationale supporting this rule, "we have, on occasion, deviated from the general rule in 'exceptional cases or particular circumstances' or when the rule would produce a 'plain miscarriage of justice.'" *Foster*, 6 F.3d at 407 (quoting *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)).  In *Friendly Farms v. Reliance Ins. Co.*, we clarified that:

> [T]he Court has discretion to entertain novel questions.  The exercise of such discretion is guided by factors such as: 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

79 F.3d 541, 545 (6th Cir. 1996) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991)).  We have rarely exercised such discretion.  *See id.* (finding nothing unjust about refusing to entertain plaintiff's argument regarding the discovery date of loss when plaintiff did not contest the issue below); *Foster*, 6 F.3d at 409 (finding no compelling reason to consider plaintiffs' argument regarding the award of attorney's fees when plaintiffs failed to raise the issue below).  Instead, we have generally focused on whether the issue was properly raised before the district court.  *See, e.g.*, *Thurman*, 97 F.3d at 835.

While we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.  *See Am. Family Prepaid Legal Corp. v. Columbus Bar Assoc.*, 498 F.3d 328, 335 (6th Cir. 2007); *Thurman*, 97 F.3d at 835 (finding that issue raised for first time in motion to alter or amend the judgment was not preserved for appeal); *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) (finding that issue raised for the first time in motion to reconsider issuance of injunction was untimely and thus waived on appeal).  *But see Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 n.6 (finding that issue raised for the first time in defendant's response to plaintiff's reply brief for summary judgment was not waived because the district court fully addressed the argument in its order and because both parties fully briefed the issue on appeal).  The Federal Circuit has articulated the rationale for not permitting issues, raised for the first time in a reply to a response, to be raised on appeal:

> Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further the non-moving party ordinarily has no right to respond to the reply brief, at least not

> until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

*Novosteel*, 284 F.3d at 1274 (finding that plaintiff had failed to preserve an issue for review by not presenting it in its principal summary judgment brief and raising it for the first time in its reply brief). *See also Lexicon*, 436 F.3d at 675-76 (Griffin, J., concurring).

In the instant case, Burke failed to properly raise the issue of the propriety of the district court's exercise of jurisdiction with the district court. Burke first raised this issue in her "Reply to Scottsdale's Response to Burke's Motion to Alter, Amend or Reconsider Declaratory Judgment." J.A. at 753. Procedurally, Scottsdale was not afforded a response to this reply. Under *Thurman* and *Pridgeon*, raising the issue in such a motion is untimely. Likewise, the fairness concerns that underlie the rule preventing issues not raised in the district court from being raised on appeal strongly point toward a finding of waiver. Burke's failure to challenge the district court's decision to exercise jurisdiction until the last minute unfairly prevented Scottsdale from presenting a counter-argument to the court. Finally, some of the discretionary factors that might permit us to consider this issue on appeal indicate that we should decline such an invitation. The resolution of this issue is not clear beyond doubt as it involves the delicate balancing of factors supporting the district court's exercise of discretion. *See infra* section II.A.3. Also, the failure to take up this issue will not result in a miscarriage of justice because Burke had ample opportunity to raise the issue to the district court before filing her reply to Scottsdale's response to her motion to amend the original declaratory judgment.

Accordingly, we find that the issue of the propriety of the district court's exercise of jurisdiction over Scottsdale's declaratory judgment action has not been properly preserved for appeal. However, in order to clarify our precedent regarding the discretionary exercise of the jurisdiction granted by the Declaratory Judgment Act and because the district court did consider the issue in this case, we address the merits of Burke's argument on this issue and conclude that the district court did not abuse its discretion by retaining jurisdiction over Scottsdale's action.

### 2. Standard of Review

We review a district court's decision to exercise jurisdiction over a declaratory judgment action for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995); *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 271 (6th Cir. 2007). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003) (quoting *Amerinational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991)).

### 3. Analysis

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has indicated that this act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. In passing the act, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id*. at 288. District courts must be afforded substantial discretion to exercise jurisdiction "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id*. at 289.

In considering whether a district court properly exercised this discretion, we have focused on the five factors first articulated in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

746 F.2d 323, 326 (6th Cir. 1984) (formatting altered); *see also Travelers*, 495 F.3d at 271; *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir. 2004); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). Applying these factors to this case demonstrates that the district court did not abuse its discretion in exercising jurisdiction pursuant to the Declaratory Judgment Act.

### a.        Settlement of the Controversy

The first factor to consider is whether the district court's judgment would settle the controversy. Burke argues that the district court's decision would not settle the controversy because of the ongoing discovery in the state court action and because the Morton Center, a non-party to the action, would be affected by the judgment. *See* Def. Br. at 16-17. Scottsdale counters that the district court's decision did settle the specific controversy of the scope of its insurance coverage for Flowers. *See* Pl. Br. at 33. The district court concluded that its "declaratory judgment [would] settle[] the controversy about the extent of Scottsdale's coverage for Flowers's sexual affair with Burke." J.A. at 22. We find that the district court did not commit a clear error of judgment in reaching this conclusion.

Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability. One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action. *See West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006) (unpublished); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue."); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986).

A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *See Travelers*, 495 F.3d at 272 ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (unpublished); *Bituminous*, 373 F.3d at 814; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Odom*, 799 F.2d at 251 (Merritt, J., dissenting) ("[D]eclaratory judgment actions seeking an

advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court. . . . Such actions seldom resolve the entire dispute among the parties and they create confusion among courts as to schedules, orderly resolution of factual disputes and *res judicata*."); *Grand Trunk*, 746 F.2d at 326 ("The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit.  It would not clear up the legal issues in that case.").

The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible.  However, the contrary results in these cases might also be explained by their different factual scenarios.  In *Bituminous*, for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees.  373 F.3d at 808.  In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant.  *Id.* at 813.  We noted that the question of employment status was already being considered in two separate state court proceedings.  *Id*.  We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be binding as to him and could not be res judicata in the tort action."  *Id.* at 814.  Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy."  *Id*.

In *Northland* we did not face similarly troubling facts.  The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion.  327 F.3d at 449.  In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court."  *Id*. at 454.  We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue.  *Id*.

In the instant case, we conclude that the district court's declaratory judgment did settle the controversy between the parties.  The only issue addressed by the district court was whether Scottsdale's insurance policy for the Morton Center covered Flowers as an insured.[1]  As in *Northland*, this issue was not and could not be considered in the state court action because Scottsdale was not a party to that action.  Likewise, the issue involved a legal, not factual, dispute, *see infra* section II.B.1, and thus, unlike the controversy in *Bituminous*, did not require the district court to inquire into matters being developed through state court discovery.  The resolution of this issue by the district court resolved all controversies between Scottsdale, Flowers, and Burke because the only controversy between them regarded the scope of the insurance policy.  Thus, the first factor points toward the exercise of jurisdiction.

### b.        Clarification of the Legal Relations at Issue

The second factor to consider is whether the district court's judgment would clarify the legal relations at issue.  Burke argues that: (1) the district court's order did little to clarify the legal relations in the underlying state action because many issues of fact regarding these relations remain to be decided by the state court; and (2) the district court's decision has increased the risk of

---

[1]Burke contends that Scottsdale's failure to make the Morton Center a party means that the insurance coverage controversy could not be resolved by the district court.  *See* Def. Br. at 17.  However, the Morton Center, while the purchaser of the policy, was not the insured whose scope of coverage was in controversy.  The controversy regarding Scottsdale's coverage of Flowers was solely a controversy between Flowers, Scottsdale, and Burke.  While the Morton Center might have a financial interest in the resolution of this controversy, it was not a necessary party to include in the declaratory judgment action.

confusion and inconsistent results because it decided the same issues of state law that are presented in the state court action. *See* Def. Br. at 17-19. In response, Scottsdale contends that the record was sufficient for the district court to clarify the one legal relationship at issue, namely that between Scottsdale and Flowers. *See* Pl. Br. at 33-34. The district court found that its order would "serv[e] 'a useful purpose in clarifying the legal relations at issue' between Scottsdale and Flowers in Burke's suit." J.A. at 22 (citing *Bitumninous*, 373 F.3d at 813). We are not convinced that the district court committed a clear error of judgment in reaching this conclusion.

The second factor in the *Grand Trunk* analysis is closely related to the first factor and is often considered in connection with it. *See, e.g., Travelers*, 495 F.3d at 271-72. Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue. *See Bituminous*, 373 F.3d at 814; *Northland*, 327 F.3d at 454. Moreover, as with the jurisprudence concerning the first factor, a split has developed in our precedent concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action. *Compare Prewitt*, 208 F. App'x at 397 ("This Court has held that declaratory relief was a proper remedy in cases where the declaratory action would clarify *only* the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action."), *Northland*, 327 F.3d at 454, *Green*, 825 F.2d at 1066, *and Odom*, 799 F.2d at 250 n.1, *with Travelers*, 495 F.3d at 272, *Abex*, 161 F. App'x at 565, *and Bituminous*, 373 F.3d at 814 ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action."). We find the former line of precedent to be more persuasive than the latter. The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

In the instant case, we consider the district court's order to have clarified the legal relations at issue – namely, the contractual duties of indemnification owed by Scottsdale to Flowers. The order clarified that Flowers was not an insured of Scottsdale and, thus, that Scottsdale had no duty to pay Burke the amount of any state court judgment she might obtain against Flowers. The order resolved all the issues regarding the legal relationships of the parties to the declaratory action. While it did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues. The state court will still need to determine whether Flowers and the Morton Center are liable to Burke. The district court's determination of the legal relationships existing between Flowers, Scottsdale, and Burke will not confuse the state court's analysis of those liability issues.[2] Accordingly, the second factor supports the district court's exercise of jurisdiction.

---

[2] The state court's resolution of the Morton Center's liability for Flowers' actions may rest on a consideration of whether Flowers was acting within the scope of his employment. *See Patterson v. Blair*, 172 S.W.3d 361, 366 (Ky. 2005) ("[A]n employer's liability is limited only to those employee actions committed in the scope of employment."). However, to the extent that the state court finds the district court's decision to preclude its own consideration of whether Flowers was acting within the scope of his employment by Morton Center, the district court would not have confused the issues for the state court, but rather resolved them.

### c.      Race for *Res Judicata*

The third factor to consider is whether the use of the declaratory judgment action is motivated by "procedural fencing" or likely to create a race for *res judicata*. Burke argues that procedural fencing exists because Scottsdale chose to have the issue of its liability determined by the federal court in advance of the state court's determination of the issue. *See* Def. Br. at 19. Burke also contends that the Morton Center's attempted use of the district court's decision for issue preclusion in the state court action further demonstrates that the exercise of jurisdiction was improper. *See id*. at 20-21. In response, Scottsdale counters that its absence as a party to the state court action as well as the timing of its complaint, three years after the start of the state court litigation, indicate that the declaratory judgment action was not filed for procedural fencing. *See* Pl. Br. at 34-36. Considering this factor, the district court found that "the case does not present the appearance of 'a race for res judicata.'" J.A. at 22 (citing *Bituminous*, 373 F.3d at 814). This finding was not unsound.

The third factor is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Amsouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). "The question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id*. at 789. We are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record. *See Travelers*, 495 F.3d at 272; *Scottsdale*, 211 F.3d at 968; *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990). *But see Abex*, 161 F. App'x at 565 (agreeing with the district court's conclusion that, while no evidence in the record demonstrated bad faith in filing, the state court's consideration of the issue raised in federal court was inevitable and thus it was apparent that plaintiff was trying to secure a favorable ruling in federal court rather than take the risk of an unfavorable one in state court). Indeed, when the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff "the benefit of the doubt that no improper motive fueled the filing of [the] action." *Bituminous*, 373 F.3d at 814; *see also Northland*, 327 F.3d at 454 (finding no improper motive when the facts demonstrated that plaintiff filed its action only after it became apparent that its insureds had no colorable claim to coverage). A district court should not deny jurisdiction to a plaintiff who has not "done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress." *Odom*, 799 F.2d at 250 n.1.

In the instant case, there is no evidence in the record that Scottsdale's action was motivated by procedural fencing. On the contrary, Scottsdale instituted this action several years after the state court proceedings began. Moreover, as Scottsdale was not a party to the state court action, the issue of its insurance coverage of Flowers was not before the state court. Thus, Scottsdale's attempt to clarify its legal obligations to Flowers in federal court cannot be construed as an attempt to create a race to judgment. While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue. As we stated in *American States Ins. Co. v. D'Atri*:

> Since the plaintiff is not, and could not be, under [state] law a party to the state court action, it is powerless . . . presently to ascertain the scope of its liability. . . . We do not believe that, considering the purposes of the Federal Declaratory Judgment Act, the plaintiff should be forced into a waiting period of legal uncertainty respecting the obligations it has incurred in its policy. . . . [A] declaration of rights and duties, such as this plaintiff seeks, should not be refused 'because of the pendency of another suit if the controversy between the parties will not necessarily be determined in that suit. A declaratory judgment proceeding which involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the

accident, will be entertained in the Federal Court, and the insurer is entitled to have the extent of the coverage of its policy declared in such a proceeding - other essentials of jurisdiction being present.'

375 F.2d 761, 763 (6th Cir. 1967) (internal citations omitted).   Accordingly, we find that Scottsdale's exercise of its right to choose a federal forum was not designed to precipitate a race for *res judicata*.

Burke's contention that the Morton Center has used the district court's judgment improperly does not alter our conclusion.  The concern articulated in the third factor is with the *plaintiff's* use of the judgment for procedural fencing.[3]  While it may be regrettable that the Morton Center has attempted to use the district court's order as a shield against liability in the state action, nothing in the record suggests that Scottsdale acted improperly in seeking a declaratory judgment.  Absent some indication of an improper motive in the record, this third factor does not point toward denying jurisdiction.

### d.      Increased Friction Between Federal and State Courts

The fourth factor to consider is whether accepting jurisdiction would increase friction between federal and state courts.  Burke argues that because the district court's judgment presented similar issues of law and fact as were present before the state court, its judgment encroached upon the state court's jurisdiction.  *See* Def. Br. at 21-23.  Scottsdale counters that the question of insurance coverage was not going to be decided by the state court and, thus, there was nothing improper about the district court's exercise of jurisdiction.  *See* Pl. Br. at 36-37.  The district court considered this factor in depth and found that "the court's order does not require a ruling on a previously undetermined question of state law [and,] [t]herefore, the court's order does not improperly encroach on state jurisdiction or create friction between state and federal courts."  J.A. at 22.  While this factor presents a much closer question, we do not find that the district court's conclusion in this regard demonstrates a manifest error of judgment.

The Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed."  *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495).  However, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction."  *Green*, 825 F.2d at 1067.  Thus, to determine whether the exercise of jurisdiction would increase friction between federal and state courts, we consider three additional sub-factors:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

---

[3]In her brief, Burke cites to *Omaha Prop. & Cas. Ins. Co.*, 923 F.2d at 447, and *Mercier*, 913 F.2d at 278-79, for the contention that misuse of a declaratory judgment need not be by a party to the declaratory action.  *See* Def. Br. at 20.  These cases do not support that proposition.

*Bituminous*, 373 F.3d at 814-15 (citing *Scottsdale*, 211 F.3d at 968) (formatting altered).

The first of these sub-factors focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action. In the context of actions seeking a declaration of the scope of insurance coverage, we have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court. *See Northland*, 327 F.3d at 454; *Green*, 825 F.3d at 1067. Indeed, "the liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action." *Green*, 825 F.3d at 1067. However, sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court. *See Travelers*, 495 F.3d at 272. In such cases, the exercise of jurisdiction would be inappropriate. *Id*.

The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action. We generally consider state courts to be in a better position to evaluate novel questions of state law. *See Travelers*, 495 F.3d at 272 ("[T]he district court held that the state court would not be in a significantly better position to evaluate the terms or exclusions in the insurance contracts because both forums would apply Kentucky state law. However because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."); *Bituminous*, 373 F.3d at 815-16 ("Where as here, there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction."); *Omaha Prop.*, 923 F.2d at 448 ("For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing a federal judge to rule first."). "This is not to say that a district court should always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion." *Scottsdale*, 211 F.3d at 969. This consideration appears to have less force when the state law is clear and when the state court is not considering the issues. In particular, when an insurance company "[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity." *Northland*, 327 F.3d at 454.

The final sub-factor focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court. We have previously found that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Travelers*, 495 F.3d at 273 (quoting *Bituminous*, 373 F.3d at 815). "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815 (quoting *Mercier*, 913 F.2d at 279). However, not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them. *See Northland*, 327 F.3d at 454 (finding that, although the resolution of the declaratory judgment action seeking a determination of the scope of an insurance policy was governed by state contract law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law").

Applying these sub-factors to this case does not require a finding that the district court's exercise of jurisdiction was improper. Because the question of the scope of Scottsdale's insurance policy is an issue of law, *see infra* section II.B.1, and does not require factual findings by the state

court, the first sub-factor supports the district court's exercise of jurisdiction in this case.[4]  While a closer matter, the second sub-factor also supports hearing Scottsdale's claim.  The question of whether a therapist acts outside of the scope of his employment when he engages in sexual activities with his clients is not a novel issue of state law.  *See infra* section II.B.3.b.  While no case has directly addressed this issue, the Kentucky courts' resolution of this issue can be reasonably predicted from existing case law.  Finally, the third sub-factor does counsel against exercising jurisdiction.  Interpretation of Kentucky insurance contracts is guided by state public policy.  *See, e.g., K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005).  Despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case.  However, given that only one of these three sub-factors counsels against exercising jurisdiction, we do not find that this fourth *Grand Trunk* factor clearly indicates that the district court's refusal to decline jurisdiction was improper in this case.

### e.  Availability of Alternative Remedy

The final factor to consider is the availability of alternative remedies.  Burke argues that a better remedy would have been to stay or dismiss the federal proceedings so that the state court could resolve the underlying factual issues.  *See* Def. Br. at 23-25.  Scottsdale maintains that its intervention in the state court proceedings would not have been a more effective remedy.  *See* Pl. Br. at 37-38.  The district court found that "the declaratory judgment is no less effective than any potential alternative remedy."  J.A. at 22.  We disagree with the district court's conclusion on this factor.

A district court should "deny declaratory relief if an alternative remedy is better or more effective."  *Grand Trunk*, 746 F.2d at 326.  One of the alternative remedies available to the federal declaratory plaintiff is to seek a declaratory judgment in state court.  Kentucky law does provide such a remedy for a party in Scottsdale's position.  *See* Ky. Rev. Stat. Ann. § 418.040 (2006) ("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.").  Another possible remedy is for the federal declaratory plaintiff to file an indemnity action at the conclusion of the state action.

However, it is not clear whether such alternative remedies are better or more effective than a federal declaratory action.  As with the first two factors, our precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction.  *Compare Northland*, 327 F.3d at 448 ("[I]ntervening in the state court action would not have necessarily provided a better or more effective alternative remedy."), *and Green*, 825 F.2d at 1067 ("[W]e are not convinced that an action for indemnity, instituted only *after* the insurance company has provided a defense which it may not have been obligated to render, is in every case a 'superior remedy.'"), *with Travelers*, 495 F.3d at 273 (finding that the alternative remedies of a state declaratory judgment or indemnity action "weighed against federal discretionary jurisdiction"), *and Bituminous*, 373 F.3d at 815 (finding that plaintiff "could have presented its case to the same court that will decide the underlying tort action" and that "a superior alternative remedy exists in the form of an indemnity action filed at the

---

[4] Burke erroneously contends that the issue of whether an employee's acts fall within the scope of employment is a question of fact.  *See* Def. Br. at 22.  Burke cites to a 1906 Kentucky case which does provide that for determinations of an employer's *vicarious liability* the question of whether the employee was acting within the scope of employment is a question of fact for the jury.  *Willis v. Maysville & Big Sandy R.R. Co.*, 92 S.W. 604, 605 (Ky. 1906).  However, modern Kentucky case law is clear that the interpretation of the terms of an insurance contract is a matter of law.  *See infra* section II.B.1.

conclusion of the underlying state action"). We conclude that, rather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff.

In this case, Scottsdale could have filed a declaratory action in the Kentucky courts. In many ways, this alternative would have been better. The Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment. The Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge. However, given that Kentucky precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court was a clearly inferior forum to resolve the issue.

The remedy of an indemnity action, on the other hand, would not have been a superior alternative for Scottsdale. In order to take advantage of such a remedy, Scottsdale would have been required to join the underlying state action, which it claims it was prevented from doing. Then, Scottsdale would have had to wait until the liability issue in the case was resolved before determining its obligations toward Flowers. Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment.

In light of these options, we consider this final factor to counsel against exercising jurisdiction in this case. However, it does not counsel so strongly against exercising jurisdiction that we must conclude that the district court abused its discretion.

### f.      Balancing the Factors

As with our other balancing tests, we have never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion. In this case, the first three factors point toward exercising jurisdiction, the fourth factor is at worst neutral about the exercise of jurisdiction, and the fifth factor counsels against exercising jurisdiction. In light of the "unique and substantial" discretion which the Declaratory Judgment Act confers on district courts, *Wilton*, 515 U.S. at 286, our consideration of all of the factors does not leave us with a definite and firm conviction that the district court committed a clear error of judgment in declining to refrain from exercising the jurisdiction granted it under the act. Accordingly, we find that the district court did not abuse its discretion in exercising jurisdiction over Scottsdale's declaratory judgment action.

## B.      SCOPE OF THERAPIST'S EMPLOYMENT ACTIVITIES UNDER KENTUCKY LAW

### 1.      Standard of Review

We review *de novo* the district court's decision to grant a motion for declaratory judgment. *Daimler-Chrysler Corp. v. Cox*, 447 F.3d 967, 971 (6th Cir. 2006). Under Kentucky law, "the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006).

### 2.      Applicable Law

We apply Kentucky law to determine the scope of Scottsdale's insurance coverage of Flowers. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) ("In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state."). In applying Kentucky law we "must follow the decisions of the state's highest court when that court has addressed the relevant issue."

*Talley*, 223 F.3d at 326.  When the issue has not been directly addressed, we must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005).  "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.*

### 3.   Analysis

The district court concluded that Flowers' sexual activities with Burke were not covered under Scottsdale's insurance policy because they were outside the scope of Flowers' employment as a matter of Kentucky law.  Burke argues that the district court erred in reaching this conclusion for two reasons.  First, Burke maintains that because the contract term "scope of employment" is inherently ambiguous, the district court should have considered the parties' reasonable expectations concerning the contract, construing all coverage doubts in favor of the insured.  *See* Def. Br. at 27-29.  Second, Burke claims that the issue of whether sexual acts are excluded from the scope of employment has not been settled by the Kentucky courts and it is likely that the Kentucky courts would follow the jurisdictions which have found such acts to be within a therapist's scope of employment.  *See id.* at 29-33.

Scottsdale, on the other hand, argues that the district court's conclusion was correct under Kentucky law.  First, Scottsdale contends that the terms of its policy are not ambiguous and thus must be given their plain and ordinary meaning.  *See* Pl. Br. at 21-24.  In particular, Scottsdale argues, the meaning of "scope of employment" has been clearly defined by the Kentucky Supreme Court.  *See id.* at 22-23.  Second, Scottsdale claims that under Kentucky law, and in particular under *Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000), a therapist's sexual activities with his patients are outside the scope of employment as a matter of law.  *See id.* at 24-26.  Finally, Scottsdale maintains that Kentucky law on this issue is consistent with other jurisdictions.  *See id.* at 27-30.

These arguments focus our attention on two main issues: (1) whether the term "scope of employment" is ambiguous, thus necessitating a consideration of the reasonable expectations of insurance coverage under Scottsdale's policy; and (2) assuming that "scope of employment" is not ambiguous, whether engaging in sexual activities with a patient is within the scope of employment of a therapist at the Morton Center as a matter of Kentucky law.  We consider each of these issues in turn.

### a.   The Insurance Policy Language Is Not Ambiguous

Kentucky statutory law provides:

> Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy.

Ky. Rev. Stat. Ann. § 304.14-360 (2006).  In interpreting insurance contracts, Kentucky courts seek to determine the intention of the parties according to the language of the contract.  *See Abney*, 215 S.W.3d at 703; *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005) ("Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'" (quoting *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 132 (Ky. 1999)). "When no ambiguity exists in the contract, [the court] look[s] only as far as the four corners of the document to determine that intent." *Abney*, 215 S.W.3d at 703. "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.* (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)).

Kentucky public policy with respect to insurance contracts dictates that "the contract should be liberally construed and any doubts resolved in favor of the insured." *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006). "[E]xceptions and exclusions should be strictly construed to make insurance effective." *K.M.R.*, 171 S.W.2d at 753; *accord Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky. 1992). "[W]here the provisions may conflict, the contract shall be resolved to afford maximum coverage." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). When a policy "is drafted in all details by the insurance company, it [] must be held strictly accountable for the language used." *Id.*

Even in light of this policy favoring the insured, Kentucky courts have recognized that "a liberal interpretation is not synonymous with a strained one." *K.M.R.*, 171 S.W.2d at 753. "Insurance policies, like statutes, must receive a sensible construction." *Simpsonville Wrecker Serv. Inc. v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 829 (Ky. App. 1989). "The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract." *St. Paul*, 870 S.W.2d at 226. The Kentucky Court of Appeals has explained:

> [I]n the absence of ambiguities or a statute to the contrary, the terms of an insurance policy will be enforced *as drawn. Unless the terms contained in an insurance policy have acquired a technical meaning in law*, they "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured."

*Goodman v. Horace Mann Ins. Co.*, 100 S.W.3d 769, 772 (Ky. App. 2003) (internal citations omitted) (emphasis added). "Neither should a non existent ambiguity be utilized to resolve a policy against the company." *St. Paul*, 870 S.W.2d at 226. "[W]here the language of an insurance policy is clear and unambiguous, it cannot be construed to mean otherwise than what it says." *Simpsonville Wrecker*, 793 S.W.2d at 829. The "courts should not rewrite an insurance contract to enlarge the risk to the insurer." *St. Paul*, 870 S.W.2d at 226-27.

"An ambiguity may either appear on the face of the policy or . . . when a provision is applied to a particular claim." *Id.* at 227. "However, '[t]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (quoting *St. Paul*, 870 S.W.2d at 226).

It is only in the case of ambiguous insurance contract language that Kentucky courts apply the doctrine of reasonable expectations. *See True*, 99 S.W.3d at 443 ("Only actual ambiguities, not fanciful ones, will trigger application of the doctrine."). "Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted 'in favor of the insured's reasonable expectations.'" *Id.* (citing Black's Law Dictionary 1273 (7th ed. 1999)). "The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528, 540 (Ky. 2005).

We do not consider any of the language in Scottsdale's insurance contract to be ambiguous. Black's Law Dictionary defines "ambiguous" as follows:

> In ordinary language this term is often confined to situations in which the same word is capable of meaning two different things, but, in relation to statutory interpretation,

> judicial usage sanctions the application of the word "ambiguity" to describe any kind
> of doubtful meaning of words, phrases or longer statutory provisions.

Black's Law Dictionary 88 (8th ed. 2004). Scottsdale's insurance contract provides that Morton Center's insureds will include its "employees and volunteers, *but only for acts within the scope of their employment* by [Morton Center]." (J.A. at 53) (emphasis added). This language clearly indicates that acts committed by employees that are not within the scope of their employment are not covered by the policy.

Contrary to Burke's assertion, the phrase "scope of employment" is not ambiguous. Rather, it has acquired a "technical meaning in law." *Goodman*, 100 S.W.3d at 772. The term "scope of employment" has been defined by Kentucky courts in their discussion of vicarious liability under Kentucky tort law. *See, e.g., Patterson v. Blair*, 172 S.W.3d 361 (Ky. 2005). Black's Law Dictionary also defines scope of employment as "the field of action in which a servant is authorized to act in the master servant relationship." Black's Law Dictionary 1374 (8th ed. 2004). In short, the phrase "scope of employment" is a legal term of art which Scottsdale incorporated into its contract with Morton Center. As such, the meaning of the term is not doubtful. While Burke might legitimately contest whether the precise contours of the term's legal meaning lead to the conclusion that Flowers' sexual activities with her were outside the scope of his employment, this "muddying of the waters" does not create an ambiguity in the insurance contract, *True*, 99 S.W.3d at 443, but rather raises the question of how the unambiguous language of the policy applies to this case.

Because the insurance contract is not ambiguous, we do not need to inquire into the reasonable expectations of the parties, but rather must construe the contract "according to the entirety of its terms and conditions as set forth in the policy." Ky. Rev. Stat. Ann. § 304.14-360. These terms exclude from Scottsdale's coverage of Flowers activities that are not within the scope of Flowers' employment by the Morton Center. Thus, we now turn to the question of whether Flowers' sexual activities with Burke were within the scope of his employment.

### b.      Engaging in Sexual Activities With a Patient Is Not Within the Scope of Employment of a Therapist

In *Patterson v. Blair*, the Kentucky Supreme Court clarified that a court must "focus on the motive of the employee in determining whether he or she acted within the scope of employment."[5] 172 S.W.3d at 369. In general, the employee acts within the scope of his employment when his "purpose, however misguided, is wholly or in part to further the master's business." *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 505 (5th ed. 1984)). However, when the employee "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment." *Id.*

While *Patterson* provides a useful background definition of "scope of employment," *Osbourne v. Payne* demonstrates how Kentucky courts have applied this definition to determine whether sexual activities are within the scope of employment of a counselor figure. 31 S.W.3d 911 (Ky. 2000). In *Osbourne*, a couple turned to a priest for marriage counseling. *Id.* at 913. However, instead of providing the appropriate counseling, the priest began an affair with the wife. *Id.* After learning of the affair, the husband sued the diocese under a theory of vicarious liability. *Id.* The Kentucky Supreme Court found that the diocese was not liable because the priest was not acting in

---

[5]The Kentucky cases which have considered the meaning of the phrase "scope of employment" have done so in the context of *respondeat superior* liability. However, as the legal meaning of this phrase was incorporated into the insurance contract, it is appropriate to consider what Kentucky courts consider to be within the scope of employment, even if those decisions did not occur in the context of insurance contract interpretation.

the scope of his employment.  *Id*. at 915.  The court reasoned that "the scope of employment of a priest could include marriage counseling, but it clearly does not include adultery."  *Id*.  The court further explained that "to be within the scope of its employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized."  *Id*.  The court thus found it "beyond question that Osborne was not advancing any cause of the diocese or engaging in behavior appropriate to the normal scope of his employment."  *Id*.  In reaching this conclusion, the court cited approvingly cases from other jurisdictions which had indicated that a therapist who engages in sexual activities with his patients acts outside the scope of his employment.  *See id*. (citing *Amato v. Greenquist*, 679 N.E.2d 446, 455 (Ill. App. 1997) (finding that a pastor was acting only for his own benefit, and thus not within the scope of his employment, when he engaged in sexual activities with plaintiff's wife); *L.L.N. v. Clauder*, 552 N.W.2d 879, 888 (Wis. App. 1996) (noting with approval a prior case which had held that "a therapist/counselor who initiated sexual contact with a client in the course of her therapy, knowing that the clinic in which he was employed forbade such conduct, was acting outside the scope of his employment as a matter of law")).

Other Kentucky cases have also indicated that an employee acts outside the scope of his employment when he is "not actuated by a purpose to serve the employer but motivated, as here, solely by a desire to satisfy the employee's own sexual proclivities."  *Am. Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002).  For example, in *P.S. v. Meade County Baptist Temple*, the Kentucky Court of Appeals found that a volunteer church employee's sexual abuse of a child during church youth activities was not within the scope of his employment.  No. 2006-CA-000155-MR, 2007 WL 491138, at *4 (Ky. App. Feb. 16, 2007) (unpublished).  In *Z.A. v. City of Louisville*, the Kentucky Supreme Court likewise found that a library employee was acting outside of the scope of his employment when he sexually molested a library patron.  No. 2004-CA-001189-MR, 2005 WL 1491554, at *5 (Ky. June 24, 2005) (unpublished).[6]

In the instant case, the district court properly concluded that a therapist's sexual affair with his patient is outside the scope of his employment as a matter of law.  While the Kentucky courts have not explicitly addressed this issue, the Kentucky Supreme Court's decision in *Osborne* strongly suggests that it would find such sexual activities not to be within a therapist's scope of employment.  A therapist's counseling of patients is not fundamentally different than a priest's counseling of married couples.  To the extent that such activities differ, those differences certainly would not suggest that having sexual relations with a patient is within the therapist's scope of employment, but not within the priest's.  Indeed, it is hard to imagine any type of counseling position where having a sexual affair with a patient would be within the scope of employment.  We have been unable to find any Kentucky case which has held that engaging in sexual activities with a client is within the person's scope of employment for purposes of insurance coverage.  On the contrary, as discussed above, many Kentucky cases have held that sexual affairs are not within an employee's scope of employment.

Burke attempts to distinguish *Osborne* and *Patterson* by asserting that those cases only deal with intentional acts as opposed to Flowers' negligent treatment of Burke.  *See* Def. Br. at 29.  However, the facts in the record indicate that Flowers did not negligently have sex with Burke, but rather that he intended to do so.  *See* J.A. at 118-21.  Moreover, Burke's complaint in the state action did not allege that Flowers' negligently had sex with Burke, but rather that he was negligent in his treatment of her because he engaged (presumably intentionally) in sexual activity with her.  *See* J.A. at 15.  Engaging in sexual relations with a patient is not motivated by a desire to serve the interests

---

[6]Unpublished opinions are generally not to be cited or used as authority in Kentucky courts.  *See* Ky. R. Civ. Proc. 76.28.  However, decisions rendered after January 1, 2003, "may be cited for consideration by the court if there is no published opinion that would adequately address the issues before the court."  *Id*.  Regardless of their precedential value in Kentucky courts, these opinions are useful for the purpose of predicting how a Kentucky court would resolve a similar issue.

of the therapist's employer, but rather, is designed "to satisfy the employee's own sexual proclivities," *Hall*, 74 S.W.3d at 692, and, thus, cannot be considered within the therapist's scope of employment under Kentucky law.

Perhaps recognizing the weakness of this first argument, Burke next contends that Kentucky courts would follow other jurisdictions that "have distinguished the therapist-patient relationship from typical medical-doctor relationships and found therapists to have acted within the scope of employment when they negligently mismanaged the patient relationship, resulting in a sexual encounter." *See* Def. Br. at 30. However, the cases Burke cites are distinguishable from this one. The insurance policies interpreted by the courts in those cases were issued directly to the psychiatrist and provided coverage for damages arising out of the performance of professional services. *See St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 699 (Minn. 1990); *L.L. v. Med. Protective Co.*, 362 N.W.2d 174, 175 (Wis. 1984); *Zipkin v. Freedman*, 436 S.W.2d 753, 754 (Mo. 1969); *St. Paul Fire & Marine Ins. Co v. Mitchell*, 296 S.E.2d 126, 127 (Ga. 1982). Those courts were not considering whether the therapists' sexual activities with their patients were within the scope of their employment. Burke offers no reason why the Kentucky courts would apply the reasoning of such cases to a different legal question than the one they were confronting.

Even if these cases were on point, nothing in the jurisprudence of the Kentucky courts suggest that they would follow the reasoning of these jurisdictions. On the contrary, the Kentucky Supreme Court in *Osborne* cited approvingly the decisions of other jurisdictions which have found that a therapist acts outside the scope of his employment when he engages in sexual activities with a patient.[7] 31 S.W.3d at 915 (citing *Amato,* 679 N.E.2d at 455; *L.L.N.*, 552 N.W.2d at 888). The Kentucky courts' approval of such cases further supports the district court's conclusion that Flowers' sexual affair with Burke was outside the scope of his employment as a matter of Kentucky law.

We find that the district court did not err in reaching this conclusion. The insurance contract is not ambiguous in its limitation of its coverage of Flowers only for acts within the scope of his employment. Accordingly, we agree with the district court that Flowers' sexual affair with Burke was not within the scope of Scottsdale's coverage of Flowers under the insurance contract as a matter of Kentucky law.

## C.   THE DISTRICT COURT'S AMENDMENT OF ITS OPINION AND ORDER

### 1.   Standard of Review

We review a district court's decision to alter or amend its judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60 for abuse of discretion. *See National Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007) (reviewing denial of motion to alter or amend judgment under Rule 59(e) for abuse of discretion); *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007) (reviewing denial of Rule 60 motion for abuse of discretion). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Tahfs*, 316 F.3d at 593 (quoting *Amerinational Indus.,* 925 F.2d at 975).

---

[7] Scottsdale directs our attention to several cases from other jurisdictions which "have found that a therapist is acting outside the scope of his employment when he engages in a sexual relationship with a patient." Pl. Br. at 27-29 (citing *Birkner v. Salt Lake County*, 771 P.2d 1053, 1058 (Utah 1989); *Doe v. Swift*, 570 So.2d 1209, 1213 (Ala. 1990); *East Alabama Behavioral Med. v. Chancey*, 883 So.2d 162 (Ala. 2003); *Amato*, 679 N.E.2d at 446). However, Scottsdale has provided no explanation of why Kentucky courts would follow the reasoning of such decisions. While we agree with Scottsdale that these cases are more on point than the ones cited by Burke, we find no reason to conclude that Kentucky courts would find them more persuasive than Burke's cases, other than the fact that *Osborne* itself cited favorably to one of these cases.

### 2.       Analysis

In its original judgment, the district court ordered that "plaintiff, Scottsdale Insurance Company, has no duty to extend coverage to Norman Flowers for any of the torts alleged in Jefferson Circuit Court Civil Action No. 03-CI-02296." J.A. at 709.  In its amended opinion and order, the district court, while adopting the same legal reasoning and reaching the same conclusions, modified the language of the order to find that "plaintiff, Scottsdale Insurance Company, has no duty to extend coverage to Norman Flowers for his sexual affair with Kathleen Burke." J.A. at 25.

Scottsdale argues that the district court should not have modified the language of its original order because the original language was accurate and the modified language creates more confusion regarding the scope of Scottsdale's coverage of Flowers. *See* Pl. Br. at 40.  In particular, Scottsdale contends that it should not have to provide Flowers with coverage for any of the torts alleged in Burke's state action because: (1) Flowers' sexual advances were so intertwined with his counseling services that he was acting outside the scope of his employment when he engaged in the sexual affair with Burke and when he counseled her; and (2) the only torts alleged by Burke in her state action directly relate to the sexual affair. *See id.* at 41-46.

Burke defends the district court's decision to modify the language of its order by arguing that the language in the original order extended beyond the scope of the issue presented in Scottsdale's motion for declaratory judgment. *See* Def. Third Br. at 18-19.  Burke contends that Flowers' counseling of Burke should not be excluded from the scope of his employment because it was distinct from his decision to seek a sexual relationship with Burke. *See id.* at 20-23.  Burke further argues that its state court action against Flowers and the Morton Center is not solely based on his engagement in an improper sexual relationship with Burke, but also alleges that Flowers was negligent in providing counseling services. *See id.* at 24-26.

We agree with Burke that the district court did not abuse its discretion in granting Defendant's motion to amend its declaratory judgment.  The district court appropriately modified the language from its original order so as to narrowly address the issue presented and to avoid an overly broad phrasing of its legal conclusions.

The language of the district court's amended order appropriately resolves the narrow issue presented in the declaratory judgment action.  In Scottsdale's Motion for Declaratory Judgment, it requested the district court "to determine, as a matter of law, that Flowers, a therapist who is alleged to have engaged in a sexual affair with his client (Burke), was not acting within the scope of his employment for purposes of determining insurance coverage." J.A. at 31.  In its Memorandum in Support of Motion for Declaratory Judgment, Scottsdale likewise framed the issue presented as "whether a therapist who engages in a sexual affair with a client is acting within the scope of his employment for purposes of determining insurance coverage." J.A. at 34.  Guided by this articulation of the legal issue, the only legal conclusion reached by the district court was that "in Kentucky, participation in an affair is outside the scope of employment as a matter of law." J.A. at 25.  The district court was not asked to consider whether Flowers' counseling of Burke was within the scope of his employment.  It therefore did not express an opinion on that question.  By focusing only on whether Scottsdale must extend coverage to Flowers for his sexual affair with Burke, the district court's amended order answers only the question presented to it.  Amending the language of an order to provide a narrow answer to the precise issue raised is not indicative of unsound judgment.

The district court's modification of the order's language was also appropriate because the language of the previous order was too broad.  The original order relieved Scottsdale of the duty to provide coverage for any of the torts alleged in Burke's state court action.  However, Burke possibly alleged torts in the state court action that were not based on Flowers' sexual affair with Burke.  The

complaint in the Jefferson Circuit Court alleged that "Flowers . . . had the obligation to treat and counsel Burke in a professional manner and he breached his professional and ethical duties to so treat her." J.A. at 14-15. The broad language of this general allegation of breach of professional duties leaves room for Burke's argument that Flowers breached these duties by negligently treating her as well as by initiating and engaging in sexual activities with her. The district court did not find that all of Flowers' treatment of Burke was outside the scope of his employment, but rather only that Flowers's sexual affair with her exceeded this scope. Accordingly, its original order which found no obligation to extend coverage for the matter pending in state court because "Flowers' tortious activity, if any, was outside the scope of his employment" was phrased too broadly. J.A. at 709. The district court did not abuse its discretion in deciding to modify an overly broad order.

## III.  CONCLUSION

For the foregoing reasons, the district court's amended opinion and order is **AFFIRMED**.