**Lecia TRUE, Appellant,**

v.

**Mable RAINES and Preferred Risk Financial, Inc., Appellees.**

**and**

**Preferred Risk Financial, Inc., Appellant,**

v.

**Lecia True and Mable Raines, Appellees.**

No. 2000–SC–0493–DG, 2000–SC–0495–DG.

Supreme Court of Kentucky.

March 20, 2003.

As Amended April 2, 2003.

Robert R. Baker, Rankin, Baker & Teater, Stanford, for Appellant/Appellee, Lecia True.

Paul V. Hibberd, Connelly, Kaercher & Stamper, Louisville, for Appellee/Appellant, Mable Raines.

O. Lee Cave, III, Clark, Ward & Cave, Louisville, Al Miller, Central City, Debbie D. Sandler, Clark, Ward & Cave, Benjamin T. Owings, McKenzie & Peden, PSC, Louisville, for Appellee/Appellant, Preferred Risk Financial, Inc.

Opinion of the Court by Justice KELLER.

## I. ISSUES

This appeal presents two (2) significant issues concerning underinsured motorist (UIM) coverage:

(1) Mable Raines ("Raines") incurred damages of $219,071.00 as a result of a two-vehicle accident caused by Lecia True ("True"), who had liability coverage of only $100,000.00. Raines, who was driving her own automobile at the time of the collision, had a $50,000.00 UIM policy, and Ted Rice ("Rice"), with whom Raines lived in a residence they jointly owned, had UIM coverage of $50,000.00 under a separate policy. Although Rice's policy did not list Raines as a named insured, Raines was listed on Rice's policy as a driver "residing in your household." Was Raines entitled to recover UIM benefits under Rice's policy? Because Rice's policy was clear and unambiguous in its UIM coverage, and Raines was neither a named insured nor otherwise covered by Rice's policy while driving her own automobile, we hold that Raines was not entitled to recover UIM benefits under Rice's policy.

(2) During the trial of this case, True's insurer, Kentucky Farm Bureau Mutual Insurance Company ("Farm Bureau"), offered to settle with Raines for the $100,000.00 policy limit. However, to preserve its subrogation rights, Raines's UIM insurer, Preferred Risk Mutual Insurance Company ("Preferred Risk"), agreed to make the $100,000.00 payment to Raines itself and thereby substitute its own funds

for Farm Bureau's. The jury determined Raines's damages to be $219,071.00. Was True relieved from all liability in excess of her $100,000.00 liability coverage by virtue of Preferred Risk's substitution of funds? While Preferred Risk's substitution of funds operated to release True from any further personal liability to Raines, the substitution preserved Preferred Risk's subrogation rights against True and thereby subjected True to personal liability to Preferred Risk for any amount it paid to True under its UIM coverage.

## II. FACTUAL BACKGROUND

On January 20, 1996, Raines, while operating an automobile owned by her, was injured in a two-vehicle accident caused by True. At the time of the accident: (1) True had liability coverage of $100,000.00 under a policy with Farm Bureau; (2) Raines had UIM coverage of $50,000.00 under a policy with Preferred Risk; and (3) Rice, with whom Raines lived in a residence they jointly owned, had UIM coverage of $50,000.00 under a separate Preferred Risk policy that was identical to Raines's policy. Neither Raines's policy nor Rice's policy listed the other on the declaration page as a "named insured," but each person was listed on the other's policy as a driver "residing in your household." No additional premium was charged for this listing.

Raines filed a negligence suit against True seeking damages that she claimed to have suffered as a result of the automobile accident. In the same action, Raines named her UIM insurer, Preferred Risk, as a defendant and sought UIM benefits under both her policy and Rice's policy in the event that True's liability insurance was insufficient to compensate her fully for her damages. Preferred Risk filed a cross claim against True seeking subrogation from her for any sums it was required to

pay Raines under the UIM coverage of either policy.

At the close of Raines's proof on the second day of trial, and after an offer by Farm Bureau to settle Raines's claim against its insured, True, for its policy limits of $100,000.00, Raines, True, and Farm Bureau tentatively agreed to settle for the policy limits. Preferred Risk, however, wanted to preserve its subrogation rights against True, and thus followed what is commonly referred to as the "*Coots* procedure" (shorthand for the procedure described in *Coots v. Allstate Insurance Co.*[1]) by agreeing to substitute its funds for the $100,000.00 that Farm Bureau had agreed to pay Raines.

The trial continued and, at the close of the proof, the trial court directed a verdict in favor of Raines as to True's liability to her and instructed the jury solely on damages. The jury determined Raines's damages to be $219,071.00,[2] and pursuant to the jury's finding, the trial court entered a judgment awarding Raines: (1) a $109,071.00 judgment against True; (2) a $50,000.00 judgment against Preferred Risk under the terms of her UIM policy; and (3) a judgment against Preferred Risk and True "for the balance of the verdict in the sum of $50,000.00 to be allocated between those Defendants contingent upon a ruling by the Court as to the applicability of [the UIM coverage under Rice's policy]." The trial court also entered a $50,000.00 judgment for Preferred Risk on its subrogation cross claim against True.

However, Preferred Risk and True filed separate motions to alter, amend or vacate the judgment, and, upon consideration of these motions, the trial court reduced Raines's total recovery to $150,000.00 instead of the $209,071.00 awarded in the original judgment. After ruling that Raines, "[b]y settling with the Defendant and accepting the settlement amount," had waived "any claim for additional recovery against [True]," the trial court reduced Raines's judgment against True to $100,000.00. And, after concluding that Raines was not entitled to stack the UIM benefits under Rice's policy because she was not a named insured thereunder, the trial court awarded Raines a judgment on only $50,000.00 against Preferred Risk.

Raines appealed, and the Court of Appeals, sitting en banc: (1) unanimously reversed the trial court's judgment to the extent that it relieved True of liability to Raines for that portion of the jury's award in excess of the insurance coverage of Farm Bureau's liability coverage and Preferred Risk's UIM coverage; and (2) in a vote divided eight (8) to six (6) in favor of reversal, held that Raines was entitled to stack the UIM coverage under Rice's policy. As to the *Coots* issue, the majority opinion stated that "the trial court's characterization of the negotiations which transpired between True and Raines as a 'settlement,' subject to enforcement after the matter had been concluded by a jury verdict, is clearly erroneous," and that "the trial court erred as a matter of law in interpreting *Coots* as relieving True of liability to Raines for the jury's award in excess of the insurance coverage." With respect to the UIM coverage issue, the majority reasoned that Rice's policy "created an ambiguity implicating the doctrine

---

1. Ky., 853 S.W.2d 895 (1993) (hereinafter "*Coots*").

2. The total award consisted of verdicts for the following: medical expenses—$19,920.00; physical pain and mental suffering—$50,000.00; lost wages—$24,151.00; impair-

ment of Raines' power to earn money in the future—$125,000.00. Pursuant to KRS 304.39–020(2),the trial court then deducted basic reparations benefits of $10,000.00 from the total jury verdict of $219,071.00.

of reasonable expectations" and that "it was reasonable for Raines and Rice to expect that they purchased coverage entitling the 'driver' named in their respective policies to have all the protections and coverage afforded thereunder." Accordingly, the Court of Appeals remanded the case for the trial court to enter judgment for Raines in the amount of $209,071.00.[3] We now reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

## III. ANALYSIS

### A. STACKING OF UIM BENEFITS

■ Utilizing a rule of interpretation known as the reasonable expectation doctrine, which resolves an insurance-policy ambiguity in favor of the insured's reasonable expectation,[4] the Court of Appeals held that Raines was entitled to UIM benefits under Rice's policy with Preferred Risk. The reasonable expectation doctrine "is based on the premise that policy language will be construed as laymen would understand it"[5] and applies only to policies with ambiguous terms[6]—e.g., when a poli-

cy is susceptible to two (2) or more reasonable interpretations.[7] Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted "in favor of the insured's reasonable expectations."[8] However, "[t]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity,"[9] Only actual ambiguities, not fanciful ones, will trigger application of the doctrine.[10]

■ We find the reasonable expectation doctrine inapplicable in this case because we discern no ambiguity within Rice's Preferred Risk policy as to whether that policy extended UIM coverage to Raines. In fact, the policy's UIM coverage provisions explicitly extend coverage only to "an 'insured'":

> We will pay ... damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of bodily injury:
> 1. Sustained by an 'insured'; and
> 2. Caused by an accident.

---

3. Because the Court of Appeals held that there was no settlement (and True was thus personally liable to Raines) and that Raines could stack the UIM coverage under both her policy and Rice's policy, the holding of the Court of Appeals would result in a judgment against True for the total amount of the damage award—$209,071.00—of which Farm Bureau would pay its policy limits of $100,000.00. Preferred Risk would pay $100,000.00, but would receive a judgment in that amount against True on its subrogation claim. Raines would be entitled to recover the remaining unpaid portion of her judgment—$9,071.00—from True personally.

4. *Simon v. Continental Ins. Co.*, Ky., 724 S.W.2d 210 (1986).

5. *Ohio Cas. Ins. Co. v. Stanfield*, Ky., 581 S.W.2d 555, 560 (1979).

6. *Consolidated American Ins. Co. v. Anderson*, Ky.App., 964 S.W.2d 811 (1997).

7. *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, Ky., 870 S.W.2d 223, 227 (1994).

8. BLACK'S LAW DICTIONARY 1273 (7th ed.1999).

9. *Sutton v. Shelter Mut. Ins. Co.*, Ky.App., 971 S.W.2d 807, 808 (1997).

10. *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc., supra* note 7 at 226; KRS 304.14–360 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, indorsement, or application attached to and made a part of the policy." *Id.*).

The policy defines "insured," for the purpose of UIM coverage, as:

1. You or any 'family member.'
2. Any other person 'occupying your covered auto.'
3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above.

And, in its general definitions provision, Rice's policy provided:

A. Throughout this policy, 'you' and 'your' refer to:

1. The 'named insured' shown in the Declarations; and
2. The spouse if a resident of the same household.

. . . .

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

We find no ambiguity in the policy's terms defining those persons entitled to UIM coverage, and, in fact, we view those terms as clear and unambiguous. And, because, at the time of the accident, Raines was not an "insured," "named insured," "spouse," nor "family member," nor was she "occupying [the named insured's] covered auto," Raines was not entitled to UIM coverage under the terms of Rice's Preferred Risk policy.

Raines's only connection to Rice's policy is her listing on the policy's declarations page as a driver of his covered automobile. Raines argued below that, because Rice's policy listed her as a "driver," but failed to define or otherwise explain the significance of the word "driver," the policy created an ambiguity that implicates the reasonable expectations doctrine. Although a majority of the Court of Appeals was persuaded by this argument, we conclude that the policy's failure to define "driver" does not constitute an ambiguity that reasonably permits Raines's interpretation of the policy's coverage. When faced with an identical allegation, the appellate courts of Connecticut recently found no ambiguity as to UIM coverage:

The declarations page in this case, even though it lists the plaintiff as an additional driver without defining the rights attaching to that designation, does not, per se, create an ambiguity in the policy's definition of a "Covered person" for a particular coverage. In our view, the policy is not *reasonably* susceptible to more than one reading with regard to a listed driver's right to underinsured motorist coverage.

For underinsured motorist coverage, the policy clearly and unambiguously defines "you," the person covered in the underinsured portion of the policy as the " 'Named insured' shown in the Declarations . . . ." Because these terms are unambiguous, the coverage provisions as a whole are unambiguous.[11]

Further, former Chief Judge Gudgel, in his separate opinion dissenting from the result reached by the majority of the Court of Appeals as to this issue, accurately describes the purpose and significance of Raines's "driver" designation:

It is not unusual for a liability insurance company to list on a policy's declarations sheet those persons who, in addition to the named insured, will be

11. *Kitmirides v. Middlesex Mutual Assurance Co.*, 65 Conn.App. 729, 783 A.2d 1079, 1083 (2001) (footnote omitted), *aff'd* 260 Conn. 336, 796 A.2d 1185, 1186 (Conn.2002) ("The thoughtful and comprehensive opinion of the Appellate Court properly resolved the issue in this certified appeal. A further discussion by this court would serve no useful purpose.").

driving the insured vehicle. This not only serves an underwriting purpose, but it also eliminates potential disputes as to whether the driver's use was permissive, so as to obligate the insurer to provide liability coverage under the policy in the event that person subsequently is involved in an accident in the insured vehicle.[12]

Because the UIM provisions of Rice's policy clearly and unambiguously defined "insured" (the person provided UIM coverage thereunder), the policy is not ambiguous as to whether Raines was provided UIM benefits. She was not; and the trial court properly ruled that Raines could not recover UIM benefits under Rice's policy.

## B. COOTS SETTLEMENT AND TRUE'S PERSONAL LIABILITY

In Coots, this Court established a procedure whereby an injured party with UIM coverage could settle with a tortfeasor and the tortfeasor's liability carrier and still retain a claim against his or her UIM insurer.[13] Under the *Coots* procedure, when the injured party, the tortfeasor and the tortfeasor's liability carrier tentatively agree to settle the injured party's claim against the tortfeasor for the policy limits, the injured party may preserve his or her UIM claim by giving notice to its UIM insurer of the parties' intent to settle and affording the UIM insurer the opportunity to preserve its subrogation rights against the tortfeasor by paying the injured party

the policy limit amount. If the UIM insurer elects not to substitute its own funds by paying the liability insurer's policy limits to the injured party: (1) the UIM insurer forfeits its subrogation rights against the tortfeasor for any amounts that it is later required to pay the injured party under its UIM coverage; (2) the tortfeasor's liability carrier pays the injured party the settlement amount; (3) the tortfeasor is released from all further liability to either the injured party or UIM insurer; and (4) the injured party may proceed against his or her UIM insurer for any damages in excess of the liability insurer's policy limits. However, if the UIM insurer elects to preserve its subrogation rights against the tortfeasor and substitutes its own funds for the settlement amount by paying the policy limit to the injured party, the UIM carrier: (1) has subrogation rights against the tortfeasor's liability carrier for the substituted amount paid to the injured party; and (2) retains its subrogation rights against the tortfeasor for any amount that it is required thereafter to pay the injured party under its UIM coverage.

■ The trial court found that True, her liability carrier Farm Bureau, Raines and her UIM carrier Preferred Risk, utilizing the *Coots* procedure, effectuated a settlement of Raines's claim against True. After its own review of the record, however, the Court of Appeals found the trial court's finding clearly erroneous. We disagree

---

12. *Accord id.* at 1083 ("The plaintiff also argues that a listing of additional drivers would be superfluous if the listed driver had no right to invoke all the coverages under the policy. This argument overlooks the liability coverage that the policy afforded to her father-in-law. That coverage presumably looks to the listing as dispositive evidence that the covered vehicle was used with permission."). We observe that this explanation appears to ring true for the policy in question, which specifically excludes UIM coverage for any person "[u]sing

a vehicle without a reasonable belief that that person is entitled to do so."

13. The 1998 General Assembly substantially codified this procedure into KRS 304.39–320. As the effective date of the statutory change, July 15, 1998, occurred subsequent to both the January, 1996 date of the accident, and the February, 1998 trial in the case, KRS 304.39–320 is not applicable to this case.

with the Court of Appeals because the trial court's finding was supported by substantial evidence. In particular, we observe that, although Raines has asserted a different state of facts on appeal, the record reflects that Raines filed a post-verdict motion asking the trial court to enforce the parties' *Coots* settlement. The body of that motion read:

> Comes the plaintiff, Mable Raines, by counsel, and moves the Court to compel the defendants, Lecia M. True, by and through her insurer, Kentucky Farm Bureau Mutual Insurance Company, and Preferred Risk Financial, Inc., to immediately pay to the plaintiff the sum of $100,000.00, which represents the amount of the settlement agreement achieved among these parties on the second day of trial and prior to the return of a verdict by the jury.
>
> In support of this Motion, the plaintiff states that on February 25, 1998, after the return of the verdict by the jury counsel for the plaintiff and counsel for the defendants agreed that rather than Preferred Risk issuing a check to the plaintiff pursuant to *Coots v. Allstate Insurance Company*, Ky., 853 S.W.2d 895 (1993), and then Farm Bureau being required to issue a check to Preferred Risk for $100,000.00, that it would be most time effective and cost effective for Farm Bureau to directly issue a check in the sum of $100,000.00 to the plaintiff. More than thirty (30) days have now elapsed since those terms of payment were agreed upon by counsel for all parties, and yet no payment has been made to the plaintiff pursuant to the settlement agreement.

Shortly thereafter, the trial court entered an order sustaining Raines's motion and directing Farm Bureau to pay Raines the $100,000.00 settlement amount, which Farm Bureau subsequently did.

 Having determined that the parties reached a *Coots* settlement, we now address the question of whether that settlement released True from any personal liability to Raines. Raines argues that because no settlement in the traditional sense was reached between Raines and True, True was not released from further personal liability to Raines. We disagree. We recognize that, technically, no settlement is reached between the injured person and the tortfeasor when the UIM carrier follows the *Coots* procedure and substitutes its funds for those of the tortfeasor's liability insurance carrier by paying its UIM insured the contemplated settlement amount.[14] However, *Coots* clearly contemplates that the procedure it adopted would release the tortfeasor from further liability to the UIM insured:

> What the statutory change does is recognize that the subrogation right cannot be absolute because in some instances it is inimical to the right of the UIM insured to *settle* with the tortfeasor and his liability insurer for the policy limits. This is so because, before making such payment of the policy limits the tortfeasor's insurer will routinely demand, as was done in the present cases, full *release and indemnification* against future claims against the tortfeasor by the UIM carrier. Indeed the liability carrier's obligation to its own insured to defend in good faith requires that it extract such a *release* rather than leave its own insured unprotected. The 1991 statutory change recognizes that there is potential for this irreconcilable clash of interest.
>
> If UIM coverage is to accomplish its remedial purpose as intended by the

---

**14.** *Washington v. Milbank Ins. Co.,* 562 N.W.2d 801, 806 n. 3 (Minn.1997); *Nation-wide Mut. Ins. Co. v. State Farm Auto. Ins. Co.,* Ky., 973 S.W.2d 56, 58 (1998).

MVRA, the UIM carrier's contractual subrogation right must not obstruct the UIM insured's right *to settle* for the policy limits even if it means *releasing* subrogation.

. . . .

This is not to say the UIM carrier's contractual subrogation should be totally disregarded. It should be disregarded only to the extent it is in conflict with the UIM insured's superior right to accept the tortfeasor's policy limits when offered, when to do so requires executing a *release and indemnity agreement.*

Again, turning to Widiss [*Uninsured and Underinsured Motorist Insurance,* 2d Ed. (1992) ] § 43.5, p. 122:

"... if the claimant has initiated a lawsuit against the tortfeasor, *the settlement agreement will usually require the claimant to agree to have that suit 'dismissed with prejudice'* so that no further legal action is possible."

. . . .

Addressing those cases where the UIM insurer believes the tortfeasor has substantial assets beyond his policy limits which should be pursued when those limits are paid, the Minnesota Supreme Court has offered UIM insurers a viable solution to their dilemma in *Schmidt v. Clothier,* 338 N.W.2d 256, 264 (Minn. 1983):

"The underinsurer, however, will have this subrogation right against the tortfeasor only if it has paid underinsurance benefits prior to *release* of the tortfeasor. Thus, the underinsurer is entitled to notice of the tentative *settlement* and an opportunity to protect those potential rights by pay-

ing underinsurance benefits before *release.*"

. . . .

Nor do we write without recognizing that the claimant may execute a *release* recognizing he intends to release not only the tortfeasor, but his own UIM carrier, specifying he has been "fully compensated for all damages and the *release* constitutes payment in satisfaction of all claims." *Richardson v. Eastland, Inc.,* Ky., 660 S.W.2d 7, 9 (1983).[15] And, because a UIM insurer's substitution of funds "operates as the equivalent of a settlement between the party claiming damages and the tort-feasor because the tort-feasor is released from further liability to the party claiming damages,"[16] we hold that, when a *Coots* settlement has been effectuated, the tortfeasor is released from further personal liability to the injured party.

While a *Coots* settlement does not release a tortfeasor's subrogation liability to an injured party's UIM insurer, such settlement does release the tortfeasor from any further liability to the injured party. To hold otherwise would remove the underlying purpose behind the *Coots* procedure. After all, if a *Coots* settlement does not release the tortfeasor from any further personal liability to the injured party, the tortfeasor would have no incentive to participate in a *Coots* settlement.[17] Prior to Coots, an injured party could not settle with a tortfeasor with a release from further liability to the tortfeasor and still retain his or her claim against his UIM insured. Only after *Coots* was an injured party permitted to do so, and, in turn, the *Coots* procedure allows the UIM insurer to elect whether to preserve its subrogation

**15.** *Coots v. Allstate Ins. Co., supra* note 1 at 901–903 (all emphasis added).

**16.** *Washington v. Milbank Ins. Co., supra* note 14 at 806 n. 3.

**17.** *Nationwide Mut. Ins. Co. v. State Farm Auto. Ins. Co., supra* note 14 at 57.

rights. If the UIM insurer does not elect to preserve its subrogation rights, the tortfeasor will certainly obtain a release from the injured party and thereby be released from any further liability to the injured party and, as a result of its inferred waiver, to the UIM insurer as well. To hold that the tortfeasor is not released from further personal liability to the injured party if the UIM insurer does elect to preserve its subrogation rights would abrogate an essential component of a *Coots* settlement.

We hold, therefore, that, under Coots, a tortfeasor's liability carrier's settlement offer is conditioned upon a release of its insured from any further liability to the injured party, and the injured party's acceptance of the UIM insurer's payment of the contemplated settlement is an acceptance of that condition and a release of the tortfeasor from any further liability to the injured party. The injured party's UIM insurer, however, preserves its subrogation claim against the tortfeasor for any amount that it is thereafter required to pay its insured under its UIM coverage. Accordingly, by virtue of the *Coots* settlement in this case, True was released from any further liability to Raines personally. The trial court's final judgment thus properly adjudicated all claims.

## IV. CONCLUSION

For the above reasons, we reverse the decision of the Court of Appeals and reinstate the Lincoln Circuit Court's judgment in its entirety.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in result only.