**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

v.

**James O. YOUNG, et al., Appellees.**

**No. 2008–SC–000333–DG.**

Supreme Court of Kentucky.

May 20, 2010.

Rehearing Denied Aug. 26, 2010.

Frank N. King, Jr., John Christopher Hopgood, Dorsey, King, Gray, Norment & Hopgood, Henderson, KY, Counsel for Appellant.

Zack N. Womack, Womack Law Offices, Henderson, KY, Counsel for James O. Young and Patricia Young, Wife.

Gene Forrest Price, Joshua Taylor Rose, Frost Brown Todd, LLC, Louisville, KY, Counsel for Anthem Health Plans of Kentucky, Inc.

Opinion of the Court by Justice VENTERS.

The sole issue in this case is whether an inaccurate *Coots* settlement notice relieved Appellant, Kentucky Farm Bureau Mutual Insurance Company from its obligation to pay underinsured motorists insurance (UIM) benefits to policyholders Appellees, James O. Young and Patricia Young. Farm Bureau argues that the Youngs' notice of their tentative settlement with the tortfeasor, Andrew Winger, failed to comply with the notice requirement of KRS 304.39–320(3) and *Coots v. Allstate Insurance Company*, 853 S.W.2d 895 (Ky.1993) by providing an inaccurate settlement amount, and thus prevented it from protecting its subrogation rights against Winger. The Union Circuit Court issued summary judgment in favor of Farm Bureau, finding that the Youngs' notice failed to satisfy KRS 304.39–320(3) because of the inaccurate information regarding the final settlement. The Court of Appeals reversed, reasoning that since the Youngs' notice stated that a "tentative settlement" had been reached with Winger, Farm Bureau had sufficient notice to preserve its

subrogation rights, despite the incorrect information. We now reverse the Court of Appeals, and reinstate summary judgment in favor of Farm Bureau because we find that the notice failed to comply with KRS 304.39–320.

On May 1, 2003, the Youngs' car was struck by a tractor-trailer truck driven by Winger causing injuries to Mr. Young and his two passengers, James Buckman and Chris Wolf. It is undisputed by the parties that Winger was at fault for the accident. Winger maintained a $1,000,000.00 liability insurance policy through Sagamore Insurance Company. Young had seven automobile insurance policies with Farm Bureau. Each policy had UIM coverage of up to $25,000.00 per person/$50,000.00 per accident which could be stacked. Farm Bureau was notified of the accident and the potential claim was assigned to Senior Claims Adjuster, Larry J. Wahnsiedler.

As a result of mediation, Young and the other accident victims agreed to settle with Winger for the limits of the Sagamore policy. After the initial settlement was agreed upon, Young's attorney sent the following letter dated January 26, 2005, to Wahnsiedler:

Please be advised that a tentative settlement has been effectuated. Mr. Young is to receive $100,000.00 from the proceeds. The proceeds were calculated on the basis of the remainder of the policy limits of the Defendant, including the $50,000.00 coverage on the vehicle operated by Mr. Young. So there is no misunderstanding, the claim of Mr. Young on the availability of the coverage is $100,000.00.

Please consider this our formal notice, pursuant to KRS 304.39–320, as is required, 30 days to consent to the settlement for purposes of retention of your subrogation rights and/or the fronting of the money. Please also consider this

formal notice, pursuant to *Coots v. Allstate Ins. Co.,* 853 S.W.2d 895 (Ky., 1993).

I would appreciate hearing from you at your earliest convenience. In most cases, based on that *Coots* letter, a UIM insurer would have believed that to protect its subrogation rights, it must pay Young the $100,000.00 settlement amount within 30 days after January 26. However, in a letter dated one day earlier on January 25, 2005, Buckman's attorney informed Wahnsiedler in a letter that the settlement gave Buckman—$900,000.00, Young— $75,000.00, and Wolf—$22,300.00. Farm Bureau and Wahnsiedler therefore had conflicting information on how much money must be advanced to Young per KRS 304.39–320(4).

Confused by the conflicting information and uncertain how much money needed to be fronted to Young, Wahnsiedler sent the following letter to Young's attorney, dated January 28, 2005:

I am in receipt of your letter of January 26th. Please give me some clarification as to the $100,000.00 which Mr. Young is to receive as a part of this tentative settlement and where the proposed proceeds are coming from. This case involves a lot of money and I don't want to assume anything incorrectly.

We will likely be advancing the amount tentatively offered from Sagamore's policy to Mr. Young in order to preserve our subrogation rights against the tort feasor.

As soon as we have sufficient documentation for our purposes we will be forwarding a check payable to Mr. Young to advance said monies to which he has agreed.

I would assume you have in your possession a copy of a certified declaration's page regarding Mr. Winger's policy with

Sagamore. I would appreciate your forwarding me a copy of this declaration sheet.

Young's attorney did not respond to Wahnsiedler's request for more information until February 22, 2005, just three days before the *Coots* deadline, when he sent him a copy of the Sagamore policy's declaration page. However, this response did not provide any of the requested information regarding the settlement amount Young was to receive.

On March 21, 2005, Young's attorney sent Wahnsiedler a formal claim, pursuant to KRS 304.39–320, demanding payment of $175,000.00 from Farm Bureau which represented the UIM coverage policy limits for the seven automobile insurance policies which Young had with Farm Bureau. This letter was the first time that Young's attorney informed Farm Bureau of the exact final settlement amount with Winger, $72,900.00.[1] Having finally received the correct settlement amount, Wahnsiedler on March 24, 2005, sent a check in that amount to Young to preserve Farm Bureau's subrogation rights against Winger and Sagamore Insurance. However, unknown to Wahnsiedler and Farm Bureau, Young had executed settlement and release papers on March 22, 2005, settling his claim against Winger for $72,900.00, simultaneously extinguishing Farm Bureau's subrogation rights against Winger for any benefits paid to Young under his UIM policies. Thus, having received the settlement amount from Winger, Young's attorney returned the check to Wahnsiedler along with further documentation regarding his claim for UIM benefits.

By letter of April 1, 2005, Wahnsiedler informed Young's attorney that since Farm Bureau's subrogation rights under KRS 304.39–320(4) had been extinguished by the execution of the settlement agreement, Farm Bureau considered any claims for UIM coverage waived.

Young consequently filed suit against Farm Bureau in the Union Circuit Court to compel payment of the UIM benefits. The trial judge granted summary judgment to Farm Bureau finding that the *Coots* notice provided by Young was insufficient. The order cited to *Liberty Mutual Fire Ins. Co. v. Massarone*, 326 F.3d 813 (6th Cir.2003), for the concept that strict compliance with KRS 304.39–320[2] is required. Thus, the failure to provide in a timely manner the correct settlement amount made the notice defective, and extinguished Young's right to claim UIM benefits.

Young appealed to the Court of Appeals which reversed the Union Circuit Court order. The Court of Appeals held that despite the failure of Young's notice to provide an accurate settlement amount, it had adequately informed Farm Bureau that a settlement had been reached, and that Farm Bureau had the obligation to take action to protect its subrogation rights. The Court of Appeals effectively placed the burden on the UIM insurer to clear up any discrepancies in the *Coots* notice. The Court of Appeals further opined that Farm Bureau could have fronted the incorrect settlement amount to Young to protect its subrogation rights and then later sued to recover any overpayment. We now reverse the Court of

---

1. Apparently, Young's original $75,000.00 settlement amount was later reduced by $2,100.00, added to Wolfs share of the settlement as an accommodation to keep Wolf from backing out of the settlement.

2. We note that the Union Circuit Court order interchangeably cited to KRS 304.30–320, KRS 304.32–320, and KRS 304.39–320. However, we believe these were simply typographical errors, and accordingly treat all cites as referring to KRS 304.39–320.

Appeals and reinstate the Union Circuit Court's award of summary judgment to Farm Bureau.

▮▮▮ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Summary judgment should not be granted unless it appears to be impossible for the non-movant to prevail at trial. *Id.* at 483.

A review of the record in this matter indicates that the material facts are not in question. The *Coots* notice provided by Young substantially overstated the settlement amount and Farm Bureau, through its agent Wahnsiedler, reasonably requested a clarification of the settlement amount. The requested clarification was not provided. Further, it is undisputed that Young's attorney, aware of the UIM insurer's request for clarification, proceeded to settle with the tortfeasor Winger and thereby effectively extinguished Farm Bureau's subrogation rights.

The question therefore is whether the *Coots* notice sent by Young's attorney satisfied the requirements of KRS 304.39–320 and provided Farm Bureau adequate notice to preserve its subrogation rights as a matter or law despite the inclusion of an erroneous settlement amount. To answer this question, we must determine what is required to be included in a *Coots* notice.

▮▮▮ A *Coots* notice is designed to give a UIM insurance carrier the opportunity to protect its subrogation rights against the tortfeasor and the tortfeasor's insurer. "Under the *Coots* procedure … the injured party may preserve his or her UIM claim by giving notice to its UIM insurer of the parties' intent to settle and affording the UIM insurer the opportunity to preserve its subrogation rights against the tortfeasor by paying the injured party the policy limit amount." *True v. Raines,* 99 S.W.3d 439, 445 (Ky.2003). Implicit in our reasoning in *Coots* was recognition of the fact that the UIM insurer must be informed of the amount of the contemplated settlement. Our opinion in *Coots* was codified by KRS 304.39–320. Generally:

> [w]here it is statutorily required that one party give the other notice in order to establish rights and obligations, the notice must state the facts required by law. In determining what facts must be stated, the legislative intent must be ascertained from all the terms of the statute, related statutes, common sense, and sound reasoning.
>
> 58 Am.Jur.2d *Notice* § 27 (2002) (internal citations omitted).

Keeping this general principle in mind, we review KRS 304.39–320. It states in pertinent part:

> (3) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of thirty (30) days to consent to the settlement or retention of subrogation rights. An injured person, or in the case of death, the

personal representative, may agree to settle a claim with a liability insurer and its insured for less than the underinsured motorist's full liability policy limits. If an underinsured motorist insurer consents to settlement or fails to respond as required by subsection (4) of this section to the settlement request within the thirty (30) day period, the injured party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.

(4) If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing to consent to settle, the underinsured motorist insurer must, *within thirty (30) days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer.* Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the liability insurer to the extent of its limits of liability insurance, and the underinsured motorist for the amounts paid to the injured party.

(emphasis added).

KRS 304.39–320(3) does not give specific details on what facts or information must be included in the *Coots* notice. It merely states that "written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage." Therefore the question becomes: what constitutes "written notice of the proposed settlement"? To answer this question we look to the language of KRS 304.39–320(4) which states that the UIM insurer must have "notice of the proposed settlement" and that to preserve its subrogation rights,

the UIM insurer only must "pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer." Thus, the statutory scheme here implies that the *Coots* notice must contain *accurate* information on, at least, the correct amount of the settlement, because that is what a UIM insurer such as Farm Bureau must pay to protect its subrogation rights. A holding that KRS 304.39–320(4) is satisfied by a *Coots* notice that informs the insurer only that a settlement has been reached, but lacks accurate information on the amount of the settlement, leaves the purpose of the statute unattained. The *Coots* process cannot be achieved unless the UIM insurer knows with reasonable certainty what it must pay. It appears from the legislative intent of KRS 304.39–320 that the *Coots* notice should provide accurate information about the proposed settlement including the correct "amount of the written offer from the underinsured motorist's liability insurer."

We also note that in those circumstances where the proposed settlement amount differs from the final settlement amount, the Coots notice only must reflect the agreed to settlement amount at the time the notice was provided. Thus in this case, the Coots notice should have listed $75,000.00 as the correct amount and the notice would not have become defective when that amount was adjusted down to $72,900.00 at the final settlement.

A cautionary note is appropriate. The rule that a *Coots* notice must contain accurate information regarding the proposed settlement is intended to protect the insurer's ability to protect its subrogation interests, not for use as a weapon to deny its policyholders benefits. In the limited circumstances where the UIM insurer has reason to doubt the accuracy of the information contained in a *Coots* notice, prudence places a responsibility on the UIM

insurer to take reasonable measures to resolve the doubt, which may include a request for clarification of the information needed to make its decision to advance its own funds in place of the tortfeasor's. Otherwise, the insurer may be found to have waived its right to deny UIM coverage after ignoring a defective notice. We believe putting this burden on the insurer and giving the policyholder the opportunity to eliminate any confusion caused by his faulty *Coots* notice is within the spirit of the policies and purposes behind the Motor Vehicle Reparations Act. KRS 304.39–010.

 Thus, in this matter the *Coots* notice provided by Young to Farm Bureau was defective since it inaccurately listed the proposed settlement as $100,000.00 instead of $75,000.00. Farm Bureau, aware that the *Coots* notice conflicted with notice from other litigants as to the amount of the settlement, protected its right to object to the defective notice via Wahnsiedler's letter to Young's attorney seeking "clarification as to the $100,000.00 which Mr. Young is to receive as a part of this tentative settlement and where the proposed proceeds are coming from." [3] Young's attorney then had the last opportunity before finalizing the settlement and eliminating Farm Bureau's subrogation rights, to correct the inaccurate notice. It became his responsibility to provide the clarification that would have allowed Farm Bureau to exercise its decision to make a proper tender of payment, per KRS 304.39–320(4). He failed to do so, providing the correct settlement amount to Farm Bureau only *after* it was too late for it to preserve its subrogation rights by substituting its funds for the settlement amount. We conclude therefore, as a matter of law, that Young's *Coots* notice was defective, and

the Union Circuit Court correctly granted summary judgment to Farm Bureau.

Accordingly, we reverse the Court of Appeals and reinstate the Union Circuit Court order granting summary judgment in favor of Appellant, Kentucky Farm Bureau.

All sitting. All concur.

---

**3.** While Farm Bureau could have been more direct in its request for clarification on the settlement agreement, we decline to critique the manner in which the insurer chooses to object to the *Coots* notice.