RENDERED:  JULY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0923-MR

NINA CHARLENE DISHON                                    APPELLANT

v.
APPEAL FROM PULASKI CIRCUIT COURT
HONORABLE TERESA WHITAKER, JUDGE
ACTION NO. 20-CI-00226

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, L. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE:  The Pulaski Circuit Court granted summary judgment in

favor of the above-captioned appellee insurance company ("Selective"), finding

that a policy Selective issued did not provide underinsured motorist (UIM)

coverage to appellant Nina Charlene Dishon ("Nina").  Nina now appeals.  Finding

no error, we affirm.

# BACKGROUND

On or about March 1, 2019, Nina was driving a Cadillac XT5 in Somerset, Kentucky, when another vehicle collided with her and caused her injuries. Nina filed a claim against the other driver, Jamie Burns, who settled with her for his liability insurance limits. However, Burns' policy limits did not cover the full expense of Nina's injuries. Because Burns was an underinsured motorist pursuant to Kentucky Revised Statute (KRS) 304.39-320, and because the XT5 was listed as a "covered auto" for UIM purposes in a policy issued by Selective, Nina then filed suit against Selective for UIM coverage. Answering, Selective admitted that the XT5 was listed as a "covered auto" in a policy it had issued, but it denied that the policy in question considered Nina an insured for UIM purposes. Selective later moved for summary judgment to that effect after deposing Nina and her husband, Oneil Dishon. Selective's summary judgment argument, in sum, was that Nina lacked UIM coverage because the policy's "Named Insured" did not own the XT5. The circuit court ultimately granted Selective's motion. This appeal followed. Additional facts will be discussed as necessary.

## STANDARD OF REVIEW

"Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005).

-2-

On appeal, "[t]he standard of review . . . of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law.  Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstances." *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002).  Because the trial court granted Selective's motion for summary judgment, and because "[i]nterpretation and construction of an insurance contract is a matter of law[,]" *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002), we review the raised issues *de novo*, giving no deference to the trial court.

## ANALYSIS

To be clear, the "Named Insured" in the policy Selective issued was *not* Nina, but rather a corporation named Tin Man Manufacturing, Inc. ("Tin Man").  And the owner of the XT5, according to the certificate of title, was *not* Tin Man, but rather "Dishon, Oneil or Dishon, [Nina] Charlene."  Parenthetically, Nina and Oneil are the sole shareholders of Tin Man, and Nina is Tin Man's President. With that in mind, the circuit court's disposition of this matter (*i.e.*, that Selective was entitled to summary judgment because Tin Man did not own the XT5) revolved around the phrase, "covered auto," set forth in the policy Selective issued to Tin Man.  To properly explore the meaning of that phrase and how it supported

-3-

the circuit court's disposition, we begin with the policy's UIM endorsement, which

provided in relevant part:

> ### A. Coverage
>
> > **1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".
>
> . . .
>
> ### B. Who Is An Insured
>
> If the Named Insured is designated in the Declarations as:
>
> . . .
>
> > **2**. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
> >
> > > **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

Tin Man is a corporation and was the "named insured" in its policy

with Selective. Thus, under the plain language of the above provisions, Tin Man's

policy with Selective *only* provided UIM coverage to individuals occupying what

the policy considered to be a "covered auto."  The Policy's "Business Auto

Coverage Form," which the UIM endorsement was a part of, contained additional

provisions delineating "covered autos."  It provided in relevant part:

> COMMERCIAL AUTO
>
> Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.  Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we," "us" and "our" refer to the company providing this insurance.  Other words and phrases that appear in quotation marks have special meaning.
>
> . . .
>
> **SECTION I – COVERED AUTOS**
>
> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages.  The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".
>
> **A. Description Of Covered Auto Designation**
>
> | Symbol | Description of Covered Auto Designation symbols |
> |---|---|
> | **1** | Any "Auto" |
> | **2** | *Owned* "Autos" Only.  Only those "autos" you *own* |

(and for Liability Coverage any "trailers" you don't own while attached to power units you own).  This includes those "autos" you acquire ownership of after the policy begins[.]

(Emphasis added.)

While the policy listed a total of ten numerical symbols delineating different classifications of coverage, we are only concerned with the "2" symbol set forth above.  That was the symbol entered next to the UIM coverage on "Item Two" of the Declarations of the policy; that symbol remained unchanged after May 18, 2018, when Tin Man added the XT5 to its schedule of "covered autos" set forth in Item Two of the Declarations of the policy; and that, in turn, is why the circuit court granted Selective summary judgment.  The circuit court held that the UIM insurance Tin Man purchased did not cover individuals injured in the XT5 (such as Nina) because Tin Man's insurance only covered individuals injured in autos Tin Man owned, and Tin Man did not own the XT5.[1]  The circuit court's holding was consistent with the plain language of Selective's policy.

---

[1] Below, Nina argued Tin Man effectively "owned" the XT5 because she purportedly "leased" Tin Man the XT5 for one dollar.  The circuit court rejected her argument, and she has not briefed and has thus abandoned that argument on appeal.  *See, e.g.*, *Osborne v. Payne*, 31 S.W.3d 911,

-6-

Notwithstanding, Nina asserts she is entitled to UIM coverage based upon the doctrines of "illusory coverage" and "reasonable expectations," and for reasons of "public policy." We disagree. Those doctrines only apply when relevant language of an insurance policy is susceptible of two or more reasonable interpretations and is thus ambiguous. *Thomas v. State Farm Fire & Cas. Co.*, 626 S.W.3d 504, 508-09 (Ky. 2021). Nina does not identify any ambiguity in the policy, and the Kentucky Supreme Court has considered policy provisions bearing the same language – applied in equivalent circumstances – not to be ambiguous or violative of public policy:

> The policy language makes it clear that if the first named insured is an "individual," the coverage is extended past the occupancy of a scheduled vehicle. However, if the first named insured is not an "individual," then an individual is only covered by the UIM policy when occupying a scheduled automobile. There is no ambiguity here. The LLC is the only named insured on the policy – and the LLC is not an "individual." Therefore, the UIM policy only covered losses sustained by Metzger while occupying a scheduled automobile.
>
> . . .
>
> [T]he doctrine of reasonable expectations, "applies only to policies with ambiguous terms." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). As we have already held the policy was unambiguous, the doctrine does not apply.

---

916 (Ky. 2000) ("Any part of a judgment appealed from that is not briefed is affirmed as being confessed.").

Finally, the Metzgers argue the Court of Appeals erred in holding the UIM coverage was not illusory or against public policy. The coverage herein is not illusory. Rather, it simply does not apply to Metzger under the facts of this case. Had she been the named insured under the policy or had she been an occupant of a covered auto at the time of the accident, Auto-Owners's UIM policy would have covered her. However, those are simply not the facts of this case. Because the LLC was the named insured – and not Metzger herself – Metzger (or any other individual) was only covered by the UIM policy when occupying a scheduled vehicle.

As to the Metzgers' argument the coverage was against public policy, we have held "UIM coverage exclusions are not impermissible under Kentucky public policy and parties are at liberty to negotiate and customize policies to fit their own needs and desired levels of coverage." *Id.* This is a reasonable UIM exclusion provision, and we will not disturb the parties' contractual rights in the absence of an ambiguity. Here, Metzger was not the named insured. She did not purchase the coverage, nor did her name appear on the policy's declarations page. The policy's terms unambiguously distinguished between policies in which the named insured was an individual and those in which the named insured was not.

*Metzger v. Auto-Owners Ins. Co.*, 607 S.W.3d 695, 699-700 (Ky. 2020).

This case is somewhat distinguishable from *Metzger* because Tin Man's policy listed the XT5 in its schedule of "covered autos" set forth in Item Two of the Declarations of the policy. But, the *type* of UIM coverage Tin Man purchased is dispositive: it only applied, by its plain terms, to vehicles Tin Man *owned*. Merely listing the XT5 in the schedule of "covered autos" did not alter or

-8-

erase the requirements of that coverage. Selective's policy was likewise unambiguous, and Nina's "reasonable expectations," "illusory coverage," and "public policy" arguments lack merit for the same reasons discussed in *Metzger*.

In a related vein, Nina also claims it would violate Kentucky's Motor Vehicles Reparations Act ("MVRA")[2] if Tin Man's policy with Selective did not provide her UIM coverage. We disagree. There is no requirement under Kentucky law that a vehicle or person have UIM coverage, or that an insurer offer UIM coverage. "UIM coverage must only be made available upon request[,]" *Rogers v. Erie Ins. Exchange*, 688 S.W.3d 527, 533 (Ky. App. 2024), and "the MVRA does not outweigh the basic and fundamental liberty to contract and create personal insurance policies." *Philadelphia Indem. Ins. Co. v. Tryon*, 502 S.W.3d 585, 591 (Ky. 2016). Tin Man requested the type of UIM coverage specified in its insurance policy; and Selective is not at fault and did not violate the MVRA by providing Tin Man exactly what it requested.

Nina also asserts Selective is "estopped" from denying her UIM coverage because her accident occurred on March 1, 2019, and, as she argues in her brief:

> Appellee first issued its Reservation of Rights letter on February 19, 2021. Appellee's denial of coverage is based only on the title of the vehicle. Nothing precluded Appellee from obtaining the title of

---

[2] *See* KRS 304.39-010 *et seq*.

-9-

the vehicle prior to issuing underinsured coverage. Nothing precluded Appellee from including vehicle title information on its change request form. Once the claim was filed, nothing precluded Appellee for nearly two years from raising the title of the vehicle coverage issue. Further, as is evidenced from Appellee's Circuit Court filings, it has had the title of the vehicle since August 16, 2019 when it paid for the vehicle's property damage. *See* Exhibit 3 to Appellee's Motion with vehicle title dated August 16, 2019. Despite having the title information for nearly a year-and-a-half, it never raised this reading of coverage. Appellee failed to present a timely reservation of rights letter.

. . .

After filing suit, Appellant promptly obtained a scheduling order and retained three experts at a considerable expense. Most importantly Appellee presented Appellant with an offer.

Br. at 10-11.

Equitable estoppel requires Nina to show: "(1) lack of knowledge or means of knowledge of the truth; (2) reliance, in good faith, based on something [Selective] did or did not do or state; and (3) resulting action or inaction on [her] part that somehow changes [her] position or status for the worse." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010). With that said, Nina's argument set forth above fails the first of these elements because she had access to the truth of her own title to the XT5, and access to the contents of Tin Man's policy, at all relevant times.

-10-

It fails the second element of equitable estoppel because it cannot be said that she was relying in good faith on something Selective did or did not do or state. Boiled down, Nina is arguing *she* relied to her detriment upon *Selective's* reliance upon (and non-discovery of) *Tin Man's* misrepresentation regarding the ownership of the XT5. As discussed, Nina herself should have known at all relevant times that Tin Man did not own the XT5, and that it had accordingly secured UIM coverage that did not apply to the vehicle.

As for Nina's assertion that Selective is at fault for failing to verify Tin Man's ownership of the XT5 prior to issuing Tin Man UIM coverage contingent upon Tin Man's ownership of the XT5, and that she was entitled to rely upon its failure, Nina is incorrect. "To the contrary, the rule is that as between the applicant and the insurance company it is the applicant's responsibility to see that the application is correctly filled out." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 127 (Ky. App. 2012) (internal quotation marks and citations omitted). "Public policy does not favor discouraging an insurer from relying upon the knowing and voluntary representations of an insurance applicant." *Id*. at 130. Absent evidence demonstrating Selective had clear notice and full cognizance of the true facts, Selective was entitled to rely upon Tin Man's representations. *Id*. at 127. Here, Nina does not dispute that Tin Man knowingly and voluntarily represented to Selective that it was indeed the owner of the XT5; and that it

-11-

knowingly and voluntarily requested, from Selective, UIM coverage contingent upon its ownership of the XT5.

As for when Selective had clear notice and full cognizance of the true facts regarding the XT5's ownership, Nina cites only a document created by Copart, dated August 16, 2019, that bears a photocopy of the certificate of title to the XT5 demonstrating the vehicle was owned by Nina and Oneil (*e.g.*, "Exhibit 3"). However, if the Copart document could have given Selective clear notice and full cognizance of the true facts regarding the XT5's ownership as of August 16, 2019, it is unclear how that knowledge, as of that date, would have been relevant: Selective issued Tin Man's policy, and Nina sustained her injuries, well beforehand.

Moreover, even if knowledge of the XT5's ownership as of August 16, 2019, was relevant, it would be pure speculation to infer that the Copart document supplied it to Selective on that date. Selective retained Copart to sell the totaled XT5 and instructed Nina to sign the title to the vehicle and send it to Copart. But, nothing of record indicates Selective believed Nina would be signing the title in her individual capacity, rather than as Tin Man's corporate representative. Nothing of record indicates when, prior to February 2021, Selective received the Copart document. To that point, on October 20, 2020, Nina unequivocally testified during her deposition that Tin Man owned the XT5; and the

Copart document's first appearance of record was as an exhibit Selective utilized during its February 12, 2021 deposition of Oneil Dishon – where Oneil was the first of the Dishons to admit that they, not Tin Man, owned the vehicle.

Another flaw in Nina's argument is her contention that Selective's issuance of a "reservation of rights letter" on February 19, 2021, provided her untimely notice that Selective was denying her claim of UIM coverage. Such letters are only necessary where, unlike here, an insurer assumes and conducts the defense of an action brought against its insured. *See Ky. Farm Bureau Mut. Ins. Co. v. Brewer*, 596 S.W.3d 620, 622 (Ky. 2020). To the extent Nina is arguing Selective's issuance of that letter on February 19, 2021, did not timely notify her that Selective was contesting her entitlement to UIM coverage under Tin Man's policy, we remind her that Selective had *already* notified her of that fact in Paragraph 8 of the answer it filed in this litigation on March 23, 2020.

Lastly, we turn to Nina's statement that "[a]fter filing suit, [she] promptly obtained a scheduling order and retained three experts at a considerable expense. Most importantly Appellee presented Appellant with an offer." To the extent Nina claims she was entitled to a settlement from Selective, she cites no authority supporting that premise, and we are aware of none. Furthermore, even if paying her experts placed Nina in what could be considered a "worse position" for estoppel purposes, nothing indicates *Selective* placed her in that worse position.

Nina should have known before hiring and paying her experts that she lacked UIM coverage because Tin Man did not own the XT5.

## CONCLUSION

We view any remaining contentions of error as moot or without merit. In sum, we conclude that the Pulaski Circuit Court properly rendered summary judgment in favor of Selective. Accordingly, we AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANT:

David G. Noble
Adrian Mendiondo
Lexington, Kentucky

BRIEF FOR APPELLEE:

Susan L. Maines
Lexington, Kentucky