NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0069n.06

No. 16-3465

**FILED**
Jan 26, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANGEL ORTIZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| AO CONSTRUCTION AND RESTORATION, INC. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellant, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | |
| JERRE RIGGLE; BRICKLAYERS LOCAL NO. 8 | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.    When Jerre Riggle, an agent of a bricklayers' union, investigated Angel Ortiz and his construction company for performing union work with the company's nonunion alter egos, which Ortiz and his wife owned as well, Ortiz felt that Riggle and the labor union had discriminated against him because of his Hispanic race. Ortiz and his construction company therefore sued Riggle and the labor union, alleging that they had violated his equal contractual rights as procured under the union's collective bargaining agreement and as guaranteed by 42 U.S.C. § 1981. The district court granted summary judgment to the defendants because Riggle, even if he had made the discriminatory statements that plaintiffs claimed he had made, was not involved in deciding to pursue the alleged adverse contractual treatment, an audit of the company by the agency administering the union's fringe benefit fund. On appeal, the

construction company's only properly raised argument is that Riggle's alter-ego investigation itself—as opposed to its alleged connection to the audit—violated the company's equal contractual rights. That argument fails because Riggle has shown a nondiscriminatory reason for conducting the investigation and because, in any event, the investigation did not infringe any of the company's rights under § 1981.

AO Construction & Restoration is an Ohio corporation. Angel Ortiz is AO's sole owner and operator. Ortiz was born in Puerto Rico. In addition to AO, Ortiz and his wife own two other companies: Chimney & Fireplace Restoration, and AO Rentals. Many AO employees are Latin Americans.

Bricklayers Local No. 8 is an Ohio labor union. Jerre Riggle was an employee of an umbrella organization and was assigned to be the business agent to Local 8. As the business agent to Local 8, Riggle enforced the terms of Local 8's collective bargaining agreement, the CBA, against Local 8's member-employers. As a part of the CBA, an agency—the Mahoning Trumbull and Shenango Valley Central Administrative Agency—collected fringe benefits from the member-employers and administered the fringe-benefits fund on the employees' behalf.

The district court took pains to understand AO's claim in this case. AO sued Riggle—and Local 8 under a theory of vicarious liability—for "falsely accusing AO of failing to make proper fringe benefit contributions, and attempting to subject AO to an unnecessary and unwarranted fringe benefit audit" in violation of its equal contract rights guaranteed by 42 U.S.C. § 1981.[1] In the amended complaint, AO alleged that Riggle called AO's employees "dumb Mexicans" and "dirty Mexicans." The district court noted that AO's case for intentional

---

[1] In the original complaint, Ortiz—not AO—sued Riggle and Local 8 under § 1981. But because Ortiz was not a party to the collective bargaining agreement between AO and Local 8, the defendants moved to dismiss for failure to state a claim upon which relief could be granted. With the district court's permission, AO filed the amended complaint, in which AO is the sole plaintiff.

discrimination, which is an element of a § 1981 claim, rested on Riggle's alleged racially discriminatory statements against Ortiz and his employees, which AO argued was direct evidence of intentional discrimination. But the court struggled to discern just what AO argued Riggle did to it that violated its equal contractual rights under § 1981. In AO's brief opposing the defendants' summary judgment motion, AO argued "that Riggle maliciously and discriminatorily initiated the alter ego audit process," "that Riggle singled out AO for the alter ego audit," and "that AO was audited for having created potential alter ego companies." AO cited, without explanation, Riggle's deposition testimony that he investigated whether AO performed union work disguised as its nonunion alter egos, that he conducted the investigation as the business agent to Local 8, and that he did so alone. Given the paucity of explanation, the district court construed the complained-of adverse action, in light of the amended complaint, to be "falsely accusing AO of failing to make proper fringe benefit contributions, and attempting to subject AO to an unnecessary and unwarranted fringe benefit audit."

Thus having construed AO's claim, the district court concluded that AO had not shown intentional discrimination, without which a § 1981 claim cannot stand, because Riggle was not involved in deciding to audit AO's contributions to the fringe-benefit fund. The court reasoned:

> While the offensive comments attributed to Defendant Riggle, if true, are very troubling to this court and should be to the Agency and the Union, there is no evidence before the court that [Riggle] was a final decisionmaker in respect to the Agency determination to pursue fringe benefit audits generally or its determination that it would assess contributions against [AO] based on a determination it had alter egos. This is especially so in light of the undisputed evidence that the Agency is responsible for collecting contributions on behalf of the fund, and that it made the ultimate decision to subject [AO], along with twenty-seven other contributing employers, to a fringe benefit audit. Neither [AO] or [Riggle and Local 8] put forth any evidence on who the final decision-maker was relative to

> determining whether fringe benefits would ultimately be pursued against
> [AO] based on alter ego status.

Because Riggle was not shown to be a decisionmaker for the Agency's subjecting AO to a fringe benefit audit or for the Agency's assessing fees, if any, based on Riggle's alter-ego investigation, the district court concluded that AO had failed to prove intentional discrimination based on Riggle's alleged remarks. It therefore granted summary judgment to the defendants.[2]

On appeal, AO argues only that Riggle's alter-ego investigation itself infringed its contractual rights under the CBA in violation of § 1981. AO therefore no longer pursues damages arising from the Agency's fringe-benefit audit.[3] Its only remaining argument is that Riggle's initiation of the alter-ego investigation itself—and not any resulting fees assessed by the Agency—was discriminatory in violation of AO's contractual rights. Riggle has stated that he was the one who initiated that investigation. Nevertheless, the argument fails because Riggle has shown a nondiscriminatory reason for conducting the alter-ego investigation and because, in any event, the investigation did not infringe AO's contractual rights.

Assuming without deciding that AO has properly presented direct evidence of Riggle's intentional discrimination, the record indicates that Riggle would have conducted the alter-ego

---

[2] While not directly at issue in this appeal, in a related suit that the district court consolidated with this suit, AO also sued the Mahoning Trumbull and Shenango Valley Central Administrative Agency, which *was* responsible for collecting employees' fringe benefits from member-employers to the CBA. Pleading that the Agency had charged fees to AO for allowing AO's alleged nonmember alter egos— Chimney & Fireplace and AO Rentals, the two companies owned by Ortiz and his wife—to do union work covered by Local 8's CBA, AO sought declaratory judgment that AO Rentals and Chimney & Fire Restoration were not its alter egos. In its answer, the Agency filed a counterclaim, seeking unpaid contributions for covered work from AO; the Agency also filed a third-party complaint against Chimney & Fireplace and AO Rentals for the contributions. In that suit, the district court entered a consent judgment. Under that judgment, AO agreed to pay at least $30,000 to the Agency, and also affirmed that, under the CBA, its employees would not perform covered work for other companies. Chimney & Fireplace also agreed not to perform commercial work covered by the CBA. The Agency, in turn, agreed to drop its claims that Chimney & Fireplace and AO Rentals are AO's alter egos under the CBA. Again, that consent judgment is not at issue on this appeal.

[3] *See, e.g.*, AO Br. at 3("The challenged conduct here is the commencement and pursuit of an alter ego investigation."); *id.* at 16–17 ("The trial court's approach erroneously failed to consider Riggle's instigation of and participation in the alter ego investigation of AO as events separate and apart from the fringe benefits audit."); *id.* at 21 ("[T]he trial court did not examine whether Riggle's instigation and pursuit of the alter ego investigation, independent of the fringe benefits audit, fell within Section 1981(b)'s description of actionable conduct.").

investigation even if he had not been motivated by discriminatory animus. When a plaintiff in a § 1981 case presents direct evidence of discrimination, the burden of persuasion shifts to the defendant to prove that the adverse action would have occurred even if the defendant had not been motivated by discrimination. *See, e.g.*, *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir. 2000). Here, Riggle has met that burden because he harbored well-founded suspicions that AO was performing union work through its nonunion alter egos. Riggle had seen that the same truck would be labeled as an AO truck one day, then as a Chimney & Fireplace truck the next day, and so on, back and forth; he had noticed that AO and Chimney & Fireplace shared the same phone number and address; and he had observed that, at a single construction site contracted to AO, there were various employees wearing AO t-shirts, AO Rentals t-shirts, and Chimney & Fireplace t-shirts. With that evidence, Riggle has rebutted AO's claim of his intentional discrimination by showing nondiscriminatory reasons for his investigation. Without intentional discrimination, a § 1981 claim fails. *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006).

In any event, Riggle's alter-ego investigation did not infringe AO's rights under § 1981. That provision protects the right to "make and enforce" contracts, including a contracting party's right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. To argue that Riggle's alter-ego investigation infringed upon its § 1981 rights, AO asserts only, without citation, that "non-Hispanic [CBA] signatories [we]re immune from alter ego investigations by Riggle," presumably suggesting that it is a privilege of the CBA that its signatories are free from alter-ego investigations. AO Br. at 21. AO offers no evidence to support that suggestion. Furthermore, while Riggle stated in deposition that his only alter-ego investigation was of AO, Riggle also explained that he had investigated other member-

employers for other violations of the CBA.  He explained that his investigation of a refractory company in Cleveland resulted in a $4,000 fine, that he also investigated a company called Lencyk for violating the CBA, that he investigated another company called Coates for failing to pay overtime and fringe benefits, and that he investigated yet another company called Gibson. Riggle's many investigations support a conclusion that the CBA's member-employers were not privileged to be free from investigations into violations of the CBA.  Because AO has not raised any genuine issue that Riggle's alter-ego investigation violated its privilege under the CBA, AO's § 1981 claim fails.

In its reply brief, AO appears to revert to the argument that it made below and that the district court rejected: that the Agency's audit of whether AO had paid its fair share of contributions was the discriminatory act.  Thus AO, after focusing solely on Riggle's alter-ego investigation in its opening brief, speaks again of an alter ego "audit" in its reply brief.  If in its reply brief AO is raising a separate claim that Riggle's discriminatory alter-ego investigation triggered the Agency's assessment of additional fees on AO—which AO appears to be raising using a "cat's paw" theory of liability for the first time—the claim is doubly forfeited.  First, AO did not make this argument to the district court.  "Where . . . a litigant has failed to clearly raise an argument in the district court, we have concluded that the argument is forfeited."  *In re Anheuser–Busch Beer Labeling Marketing & Sales Practices Litig.*, 633 F. App'x 515, 529 (6th Cir. 2016).  Second, AO did not make the argument in its opening brief.  "[A]s a 'matter of litigation fairness,' we have considered arguments raised for the first time in reply briefs to be forfeited, since 'the [opposing] party ordinarily has no right to respond to the reply.'"  *Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

We affirm the district court's judgment.[4]

---

[4] We do not reach Local 8's alleged vicarious liability for Riggle's actions because Riggle is not liable.