**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0077n.06

Case No. 19-1397

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARGARET CONE, | ) | **FILED**<br>Feb 03, 2020<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MARK TESSLER, SHERMAN JACKSON, | ) | MICHIGAN |
| and DAVID HOWELL, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SILER, GIBBONS, and THAPAR, Circuit Judges.

SILER, Circuit Judge. Plaintiff Margaret Cone appeals the district court's determination that her fraudulent misrepresentation and promissory estoppel claims were time-barred by Michigan's statutes of limitations. This dispute originated from an agreement between Cone and Defendants to host a program at the University of Michigan for Islamic scholars from al-Azhar University. Cone alleges that Defendants misled her regarding their ability to administer the program, did little work to prepare for the program, and then pilfered hundreds of thousands of dollars in fees for work they did not perform after withdrawing from the program. Nevertheless, the district court dismissed her case after finding that the claims accrued outside of the six-year limitations period. We affirm.

I.

This case arises out of Cone's attempt to create the World Leadership Program (WLP) through a partnership with al-Azhar University and the University of Michigan (UM). In the program, Islamic scholars would be trained in English and then come to the United States for a summer to experience the culture and interact with U.S. scholars. After securing the participation of al-Azhar University, Cone sought a commitment from UM. In December 2008, Defendants Mark Tessler and Sherman Jackson, each a professor at UM, agreed that the university would partner with the program, with Jackson serving as executive coordinator. Further, the parties agreed that UM would not administer the program, obtain the funding, or provide housing, facilities, or food. However, months later, Cone changed course and requested that UM administer the WLP; Tessler agreed to her request.

In September 2009, Cone obtained a commitment from the United Arab Emirates (UAE) to fund the program. Subsequently, the UAE sent a letter to Tessler approving the budget set by Cone and making its contribution of $2,033,590 contingent upon the money's being spent in accordance with the budget, allowing for reasonable adjustments as needed by Jackson. In October 2009, Tessler accepted the terms. In December 2009, Tessler and Jackson sent a letter with wiring instructions to a UM account, per the UAE's request. The UM account belonged to the Center of Political Studies (CPS) and listed Defendant David Howell, the assistant director of CPS, on the account. Later that month, Jackson and Tessler sent a letter to al-Azhar University explaining their and UM's role in the WLP. In February 2010, the UAE sent a letter to Tessler noting that it had wired the $2,033,590 to the UM bank account it was given. But this partnership did not last long. By the end of April 2010, Tessler, Jackson, and UM had all withdrawn from the WLP.

According to Cone, the relationship deteriorated due to misrepresentations and self-dealing on the parts of Tessler, Jackson, and Howell. Specifically, Cone asserts that Defendants promised her that they would host the WLP in the UM International Institute, would abide by the budget she created, and Jackson would provide curriculum, faculty, and course materials as lead professor for the program. Instead, Jackson demanded a $500,000 payment that was not in the original budget for UM to administer the program and then did little actual work to prepare for the program. Further, Cone alleges Jackson misled her about his ability to take part in the program because he was committed to be overseas when he was supposed to be leading the WLP at UM. Additionally, she notes that he convinced her to move the program to CPS based on misrepresentations about the International Institute's capability of hosting such a program.[1]

With regard to Howell, Cone contends that he promised to accept the funds on behalf of the International Institute and adhere to the agreed-upon budget, but instead had the funds deposited in the CPS account and allocated hundreds of thousands of dollars in fees to Defendants in violation of the approved budget. As for Tessler, Cone states that he was on an undisclosed sabbatical leave beginning in January 2010 and, under UM policy, was unable to accept the assignment he did with the WLP. Basically, Cone argues that Tessler, Howell, and Jackson did little to prepare for the WLP, misled her on their willingness to adhere to the budget and availability for administering the program, and then plundered hundreds of thousands of dollars from the

---

[1] Cone avers that she later learned that CPS was a self-funded and self-administered research center that only had loose associations with UM and was under the administrative control of Howell and Tessler.

funding for themselves and CPS.[2]  Ultimately, due to the myriad of issues and the withdrawal of Defendants and UM, Cone was forced to move the program to Georgetown University.

On April 8, 2016, Cone filed suit in the United States District Court for the Eastern District of Michigan, asserting claims for breach of contract, fraudulent misrepresentation, promissory estoppel, and unjust enrichment.  After Defendants filed motions to dismiss because Cone's claims were time-barred, the district court ruled that her claims were not barred by the statutes of limitations because a prior federal lawsuit brought by Cone's corporation, World Leadership Program Institute (WLPI),[3] in 2014 tolled the limitations period.[4]  Subsequently, Defendants asserted again in their motion for summary judgment that the relevant Michigan statutes of limitations barred Cone's claims.  In her response, Cone argued that the WLPI federal lawsuit tolled the limitations period and that the district court could not reconsider its previous decision because of the law-of-the-case doctrine.[5]  On April 8, 2019, the district court granted Defendants' motion for summary judgment.  With regard to the statute-of-limitations issue, the court ruled that Cone's claims were not tolled, and thus were time-barred, because WLPI lacked standing to bring

---

[2] Defendants did eventually refund the UAE, but Cone claims the payment fell short of the initial grant by hundreds of thousands of dollars.

[3] Originally, Cone created East West Learning Initiative, Inc. to manage the WLP in December 2008.  Subsequently, Cone created WLPI in October 2010 to take over management of the WLP.

[4] In October 2014, WLPI sued Tessler, Jackson, Howell, and others in the Eastern District of Michigan asserting various state-law claims and a 42 U.S.C. § 1983 claim.  That court dismissed the lawsuit, which was based on federal-question jurisdiction, after determining that the statute of limitations had run on the § 1983 claim and declining to exercise supplemental jurisdiction over the state-law claims.  WLPI then filed a lawsuit in a state court in Michigan against Defendants and one other person alleging the same claims Cone does now.  Eventually, after protracted litigation, both Michigan trial and appellate courts ruled that WLPI lacked standing to sue because it did not exist at the time the alleged events that formed the basis of the claim happened.  Cone was not named as a plaintiff in either of those two lawsuits.

[5] Cone did not raise either issue on appeal.

the previous lawsuit and that the law-of-the-case doctrine did not prevent it from reconsidering its ruling from a different stage in the litigation. In the alternative, the district court dismissed Cone's breach of contract and unjust enrichment claims on the merits.[6] After the district court entered judgment in favor of Defendants, Cone filed a timely appeal to this court.

## II.

We review a district court's grant of summary judgment de novo. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). "[S]ummary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).

## III.

On appeal, Cone challenges the district court's dismissal of her fraudulent misrepresentation and promissory estoppel claims as time-barred under Michigan's statutes of limitations. Under Michigan law, the statute of limitations for a fraudulent misrepresentation claim is six years. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1135 (6th Cir. 1995). *See also* Mich. Comp. Laws § 600.5813. The statute of limitations for promissory estoppel claims is also six years in Michigan. *Garden City Osteopathic Hosp.*, 55 F.3d at 1131 (citing *Huhtala v. Travelers Ins. Co.*, 257 N.W.2d 640, 644 (Mich. 1977)). *See also* Mich. Comp. Laws § 600.5807(9). Additionally, a claim accrues on the date in which the plaintiff was harmed by the defendant's actions, not the date on which the defendant's conduct occurred. *See* Mich. Comp.

---

[6] Cone does not challenge the dismissal of her claims for breach of contract and unjust enrichment.

Laws § 600.5827. Because Cone filed her lawsuit on April 8, 2016, her claims must have accrued on or after April 8, 2010. The district court determined that they accrued prior to April 8, 2010.

Before us, Cone makes two arguments: (1) the district court failed to determine whether any of her causes of action could have accrued within the limitations period; and (2) the continuing-violations doctrine applies because some violations occurred after April 8, 2010. However, as a threshold issue, we must consider whether Cone forfeited these arguments by not presenting them to the district court. Cone claims that she did raise the issue before the district court and cites to a couple of passages from her response. However, neither of these passages was in the part of her response that discussed the statute-of-limitations issue nor did it explicitly invoke either of the arguments she now raises. These vague references were not sufficient to squarely present the issues to the trial court. *See O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). Therefore, we must next determine whether we should consider arguments not raised before the district court.

Generally, an argument not raised before the district court is forfeited on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). There are two main policies that justify this general rule: (1) "the rule eases appellate review by having the district court first consider the issue"; and (2) "the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Id.* (quoting *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993)) (internal quotation marks omitted). However, we have deviated from this general rule on occasion in exceptional cases, particular circumstances, or when the rule would produce a plain miscarriage of justice. *Foster*, 6 F.3d at 407 (quoting *Pinney Dock and Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)). In past cases, we have used the following factors to aid in determining whether to consider a forfeited claim:

(1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts;

(2) whether the proper resolution of the new issue is clear and beyond doubt;

(3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and

(4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)). Nevertheless, we are not compelled to hear, nor should we hear, "an issue not presented to the district court unless reaching that issue serves an over-arching purpose beyond that of arriving at the correct result in an individual case." *Foster*, 6 F.3d at 408. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

In applying the factors, it is clear that factors one, two, and four do not support considering the issues raised by Cone. Her issues do not raise pure questions of law; rather, they require that we determine whether there was conduct that fell within the limitations period that would either rise to the level of a distinct cause of action or constitute a continuing violation. Further, it is not clear and beyond doubt that the proper resolution of the questions presented would result in Cone's prevailing. Although Cone argues that failing to consider the issues she now raises would result in a miscarriage of justice, "an oversight on the part of . . . counsel is not alone a justification for departing from our usual procedure of non-review of issues not raised below, since such an exception to the rule would effectively eviscerate the rule." *United States v. Means*, 133 F.3d 444, 448 (6th Cir. 1998). Accordingly, we decline to consider the issues Cone failed to raise before the district court.

**AFFIRMED.**